496 Pa. 324 (1981)
437 A.2d 1
PENNSYLVANIA STATE ASSOCIATION OF TOWNSHIP SUPERVISORS, Asa D. Burkholder, Leon Lankford, and Vince Charpentier, Appellants,
v.
Richard L. THORNBURGH, Governor of the Commonwealth of Pennsylvania, Robert E. Casey, Treasurer of the Commonwealth of Pennsylvania, Ethel D. Allen, Secretary of the Commonwealth of Pennsylvania, Franklin County Board of Elections, Bucks County Board of Elections, York County Board of Elections, Pennsylvania State Ethics Commission, District Attorney of Franklin County, District Attorney of Bucks County, and District Attorney of York County.
Supreme Court of Pennsylvania.
Argued May 22, 1980.
Decided September 29, 1981.
Reargument Denied December 1, 1981.
*325 Thomas L. Wenger, Harrisburg, for appellants.
Robert B. Hoffman, Deputy Atty. Gen., for appellees Thornburgh, Casey and Allen.
David Rittenhouse Morrison, Deputy Atty. Gen., for appellee Pennsylvania State Ethics Com'n.
John R. Walker, Dist. Atty., for appellee Franklin County.
Kenneth G. Biehn, Dist. Atty., for appellee Bucks County.
John C. Uhler, Dist. Atty., for appellee York County.
Before O'BRIEN, C.J., ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

OPINION OF THE COURT
PER CURIAM:
The Court being equally divided, the Order of the Commonwealth Court is affirmed.
O'BRIEN, C.J., files an Opinion in Support of Affirmance which KAUFFMAN, J., joins.
NIX, J., would affirm the order of the Commonwealth Court.
ROBERTS, J., files an Opinion in Support of Reversal which LARSEN and FLAHERTY, JJ., join.
FLAHERTY, J., files an Opinion in Support of Reversal.

*326 OPINION IN SUPPORT OF AFFIRMANCE
O'BRIEN, Chief Justice.
This is an appeal from an Order entered in the Commonwealth Court sustaining the Preliminary Objections of appellees and dismissing appellants' Petition for Review.
Appellants are three individual supervisors of townships of the second class and the Pennsylvania State Association of Township Supervisors. On February 26, 1979, appellants filed a Petition for Review on behalf of themselves and the class they represent, in Commonwealth Court. Named as respondents were the Governor, the Treasurer, the Secretary of the Commonwealth, and the Auditor General[1] as individuals, and the Franklin, Bucks and York County Boards of Election and District Attorneys individually and as representatives of classes, and the Pennsylvania State Ethics Commission.
By their Petition for Review appellants alleged the Public Officials Ethics Law, 65 P.S. §§ 401, et seq., is violative of the Constitutions of the United States or of this Commonwealth, in eleven particulars. By their prayer for relief appellants requested that Commonwealth Court declare the Act unconstitutional, and further that it enjoin respondents, appellees herein, from enforcing it.
Appellees filed Preliminary Objections raising a question of jurisdiction and a demurrer. The latter was sustained by the Commonwealth Court and appellants' Petition for Review was, on August 31, 1979, dismissed. Hence this appeal.
Appellants now advance four arguments, each of which asserts a constitutional defect in the Act.[2]
*327 First, appellants contend the financial disclosure requirements contained in the Act unconstitutionally infringe upon their right of privacy. The challenged statutory provision is as follows:
"(a) The statement of financial interests filed pursuant to this act shall be on a form prescribed by the commission and shall be signed under penalty of perjury by the person required to file the statement.
"(b) The statement shall include the following information for the prior calendar year with regard to the person required to file the statement and the members of his immediate family:
"(1) The name, address and position of the person required to file the statement.
"(2) The occupations or professions of the person required to file the statement and those of his immediate family.
"(3) Any direct or indirect interest in any real estate which was sold or leased to the Commonwealth, any of its agencies or political subdivisions; purchased or leased from the Commonwealth, any of its agencies or political subdivisions; or which was the subject of any condemnation proceedings by the Commonwealth, any of its agencies or political subdivisions.
"(4) The name and address of each creditor to whom is owed in excess of $5,000 and the interest rate thereon. However, loans or credit extended between members of the immediate family and mortgages securing real property which is the principal residence of the person filing or of his spouse shall not be included.
"(5) The name and address of any person who is the direct or indirect source of income totalling in the aggregate $500 or more. However, this provision shall not be construed to require the divulgence of confidential *328 information protected by statute or existing professional codes of ethics.
"(6) The name and address of any person from whom a gift or gifts valued in the aggregate at $200 or more were received, and the value and the circumstances of each gift. However, this provision shall not be applicable to gifts received from the individual's spouse, parents, parents by marriage, siblings, children or grandchildren.
"(7) The source of any honorarium received which is in excess of $100.
"(8) Any office, directorship or employment of any nature whatsoever in any business entity.
"(9) Any financial interest in any legal entity engaged in business for profit.
"(c) The statement of financial interest need not include specific amounts for any of the items required to be listed." 65 P.S. § 405 (1980-81 Supp.).
In Snider v. Thornburgh, 496 Pa. ___, 436 A.2d 593 (1981), we held that the statute's minimal intrusion into the area of protected privacy of elected school directors was outweighed by the substantial legislative interests vindicated by the Act.
Appellants in the instant case appear to concede the correctness of our Snider holding as it would apply to statewide officials; they complain, rather, that the Act is unconstitutional when applied to them.
"As contrasted to local officials, state office holders, generally have greater public resources at their disposal, greater authority to make appointments and more important decisions, greater opportunity to influence people and, consequently, greater opportunity and temptation to engage in the mischief at which the statute is directed." (Brief for appellants at 17-18).
The argument advanced by appellants would be more persuasive if the intrusion into their private lives were more significant. But a review of section five of the Act, which describes those facts which must be disclosed, clearly demonstrates *329 that the intrusion into appellants' privacy occasioned by the Act is minimal.
Moreover, appellant's disingenuous argument concerning their limited opportunity for mischief is inapt. For the negative implication of that argument is that there exists nevertheless some opportunity. See 53 P.S. §§ 65510, 65516. Having conceded the propriety of the Legislature's concern in reducing corruption in government, and in concomitantly increasing public confidence in government, a concession which in our view must be made, the elements to be weighed become clear. On the one hand is the legitimate expression of legislative concern; on the other is appellants' rights to privacy in their financial affairs. The fulcrum between them upon which the balance rests is the Act and the minimal intrusion it effects.[3] I conclude that, so struck, the balance tips clearly in favor of the Legislature, in the face of whose interests appellants' privacy must yield.
Appellants next claim the Act deprives them of the equal protection of the laws in that its scope is overbroad. The gravamen of appellants' complaint is that the Act imposes identical burdens upon all public officials, whether they function at the local level or throughout the state. This is but a paraphrasing, in equal protection language, of the argument appellants earlier make in a privacy context.
While it is true that the public responsibilities of local officials are more limited than those of officials who serve the entire Commonwealth, the mischief at which the Act is directed is present for both. Excluded from the strictures of the Act is a myriad of officials who perform purely ministerial functions. 65 P.S. § 402. But upon public servants who perform more than merely ministerial tasks, whether they *330 function on a grand or more limited scale, the Legislature has determined to impose a uniform burden.
In Snider v. Thornburgh, supra, we reaffirmed that a legislative classification must bear a "fair and substantial relation to the object of the legislation . . .". Moyer v. Phillips, 462 Pa. 395, 341 A.2d 441 (1971). In the face of this standard appellants' "overbreadth" equal protection argument must fail. The Legislature failed to distinguish between, and treat differently, state and local officials because the object of the legislation applies equally to both.
Appellants next assert the Act is violative of the due process clause of the Fourteenth Amendment of the Constitution of the United States in that it is "so vague that men of common intelligence must necessarily guess at its meaning. . .". Connally v. General Construction Company, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). Specifically appellants assail the provisions of sections 3 and 4 of the Act as being impermissibly vague.[4] *331
*332 The Commonwealth Court summarily disposed of appellants' claim. I conclude, as appellees argue, that appellants were without standing to raise the issue at all.
"It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand. [citation omitted]" United States v. Mazurie, 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975).
The holdings in our cases are completely consistent with Mazurie. See, Commonwealth v. Hughes, 468 Pa. 502, 364 A.2d 306 (1976); Commonwealth v. Heinbaugh, 467 Pa. 1, 354 A.2d 244 (1976). To do otherwise "would require us to adjudicate the rights of parties not presently before the Court, at the insistence of a party who does not have standing to assert such rights. It is for this reason that facial attacks on the validity of statutes are not generally permitted." Heinbaugh, id., 467 Pa. at 4, 354 A.2d 244.
In the instant case appellants do not argue the presence of First Amendment implications. Rather appellants contend the Act regulates or proscribes certain conduct in terms impermissibly vague.[5] Appellants do not allege they have *333 engaged in the conduct regulated by the Act. They do not assert an intention to engage in such conduct. Neither do appellants argue a desire to engage in such conduct, which desire has been "chilled" by the existence of the Act.
Moreover, section seven of the Act provides that parties may request of the Ethics Commission an opinion, written or unwritten, "with respect to such person's duties under [the] Act". Upon receipt of such request the Commission must issue an opinion. "No person who acts in good faith on an opinion issued to him by the Commission shall be subject to criminal or civil penalties for so acting . . .". 65 P.S. § 407(9). In Civil Service Commission v. Letter Carriers, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973), the Supreme Court remarked in a very similar context, that "it is . . . important . . . that the Commission has established a procedure by which an employee in doubt about the validity of a proposed course of conduct may seek and obtain advice from the Commission and thereby remove any doubt there may be as to the meaning of the law, at least insofar as the Commission itself is concerned." Id., 413 U.S. at 580, 93 S.Ct. at 2897.
I agree that the procedure is important, particularly in that parties situated as are these appellants will presumably be excused from fulfilling the requirement of standing, other than establishing that they are covered by the Act.
*334 Accordingly I conclude that appellants have failed to demonstrate they have standing to advance a challenge to the Act alleging it is vague on its face. I would hold, moreover, that appellants in fact do not have standing to do so.
Finally appellants assail section 3(d) of the Act as constituting an impermissible delegation of legislative power.
We have often held that "the legislature cannot delegate its power to make laws to any other body or authority. . . . [citations omitted] . . . `While not specifically set forth in the Constitution, the non-delegation rule is a natural corollary to Article II, § 1 since it requires that the basic policy choices involved in "legislative power" actually be made by the Legislature as constitutionally mandated.'" State Board of Chiropractic Examiners v. Life Fellowship of Pennsylvania, 441 Pa. 293, 297, 272 A.2d 478 (1971).
Section 3 of the Act identifies certain specific conduct which constitutes "Restricted Activities". Section 3(d) provides that:
"Other areas of possible conflict shall be addressed by the Commission pursuant to Paragraph (9) of Section (7)." 65 P.S. § 403(d).
Section 7(9), 65 P.S. § 407(9), authorizes the Commission to issue opinions and/or advice to parties requesting it and also to conduct independent investigations of possible conflicts of interest. It is the authority granted to the Commission by section 3(d) which appellants claim violates the constitutional prohibition against delegation of legislative authority.
When presented with this question the Commonwealth Court observed:
"Given the thousands of public officials who are subject to the Act, each with private circumstances presenting at least the potentiality of a conflict of interest with the public trust, we must conclude that the legislature provided the Commonwealth with sufficient statutory direction and guidelines . . .". 405 A.2d 614 at 617.
This observation comports with the analysis we have utilized in the past. We have recognized that it can be "impractical" *335 or "almost impossible" for the legislature to provide precise standards encompassing all potential situations. Commonwealth, Water & Power Resources Board v. Green Spring Co., 394 Pa. 1, 9, 145 A.2d 178 (1958). Consequently we have held that the Legislature may confer significant rule making discretion upon an administrative agency, subject to the proviso that the "legislation must contain adequate standards which will guide and restrain the exercise of the delegated administrative function." Chartiers Valley Joint Schools v. Allegheny County Board of School Directors, 418 Pa. 520, 529, 211 A.2d 487 (1965).
In ascertaining the sufficiency of the standards provided by the Legislature, we look to "the purpose and scope of the Act, the subject matters covered therein, the duties prescribed, and the broad or narrow powers granted." Dauphin Deposit Trust Co. v. Myers, 388 Pa. 444, 449, 130 A.2d 686 (1957).
Appellants in the instant case have advanced a facial attack upon the statute. The record before us discloses no action taken by the Commission pursuant to section 3(d) or 7(9). My review of the statute convinces me that by section 1, 65 P.S. § 401, section 3, 65 P.S. § 403, section 4, 65 P.S. § 404, and section 5, 65 P.S. § 405, the Act provides, on its face, adequate standards by which to guide the Commission in the exercise of its discretion.
It is of course not inconceivable that the Commission at some future time may invoke its authority under sections 3(d) and 7(9) in such a fashion as will amount to a usurpation of the Legislature's authority. In such an event we may declare that action unconstitutional. But on its face, as appellants have presented the matter to us, I conclude the Legislature has properly fashioned the statute with adequate and sufficient standards under which the Commission may act.
Accordingly, I would affirm the order of the Commonwealth Court.
KAUFFMAN, J., joins in this opinion.

*336 OPINION IN SUPPORT OF REVERSAL
ROBERTS, Justice.
For the reasons set forth in Snider v. Thornburgh, 496 Pa. 159, 436 A.2d 593 (1981) (Roberts, J., Part II of Opinion in Support of Reversal), I would hold unconstitutional the mandatory financial disclosure requirements relating to spouses, and the sanctions imposed for non-compliance. Clearly, where an office seeker or holder is unable to comply with the spousal disclosure requirements because the spouse's financial interests are beyond his or her knowledge or control, disqualification from public office and imposition of criminal sanctions violate due process of law.
LARSEN and FLAHERTY, JJ., join in this Opinion in Support of Reversal.

OPINION IN SUPPORT OF REVERSAL
FLAHERTY, Justice.
For the reasons set forth in my opinion in Snider v. Thornburgh, 496 Pa. 159, 436 A.2d 593 (1981), I dissent from that portion of the Opinion in Support of Affirmance upholding sections four and five of the Act, 65 P.S. §§ 404, 405 (Supp. 1980-1981), which requires the disclosure of the financial affairs of the employee's, official's or candidate's family.
NOTES
[1] The Auditor General was subsequently dropped as a party.
[2] Appellants have not specifically challenged the statutory disclosure requirement relating to the families of those persons required to file. The only argument advanced by appellants at any point in the instant case which concerns the financial disclosure requirements is that which asserts a violation of their rights of privacy. The decision by the members in support of reversal to create and then dispose of a due process argument contravenes our well settled principle that courts will restrict themselves to those issues properly presented and will not usurp the role of the litigants in the management of a lawsuit. Cf. Weigand v. Weigand, 461 Pa. 482, 337 A.2d 256 (1975). See also, Witt v. Commonwealth, Department of Banking, 493 Pa. 77, 425 A.2d 374, 376-377 (1981).
[3] Compare the information required with the materials which concerned the Court in Nixon v. Administrator of General Services, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977): "extremely private communications between [Nixon] and among others, his wife, his daughters, his physician, lawyer and clergyman, and his close friends, as well as his personal diary, dictabelts and his wife's personal files." 433 U.S. at 459, 97 S.Ct. at 2798. The privacy interests asserted over these materials did not prevail.
[4] The challenged sections are as follows:

"§ 403. Restricted Activities
"(a) No public official or public employee shall use his public office or any confidential information received through his holding public office to obtain financial gain other than compensation provided by law for himself, a member of his immediate family, or a business with which he is associated.
"(b) No person shall offer or give to a public official or public employee or candidate for public office or a member of his immediate family or a business with which he is associated, and no public official or public employee or candidate for public office shall solicit or accept, anything of value, including a gift, loan, political contribution, reward, or promise of future employment based on any understanding that the vote, official action, or judgment of the public official or public employee or candidate for public office would be influenced thereby.
"(c) No public official or public employee or a member of his immediate family or any business in which the person or a member of the person's immediate family is a director, officer, owner or holder of stock exceeding 5% of the equity at fair market value of the business shall enter into any contract valued at $500 or more with a governmental body unless the contract has been awarded through an open and public process, including prior public notice and subsequent public disclosure of all proposals considered and contracts awarded. Any contract made in violation of this subsection shall be voidable by a court of competent jurisdiction if the suit is commenced within 90 days of making of the contract.
"(d) Other areas of possible conflict shall be addressed by the commission pursuant to paragraph (9) of section 7.
"(e) No former official or public employee shall represent a person, with or without compensation, on any matter before the governmental body with which he has been associated for one year after he leaves that body.
"(f) No person shall use for any commercial purpose information copied from statements of financial interests required by this act or from lists compiled from such statements.
"(g) No former executive-level State employee may for a period of two years from the time that he terminates his State employment be employed by, receive compensation from, assist or act in a representative capacity for a business or corporation that he actively participates in recruiting to the Commonwealth of Pennsylvania or that he actively participated in inducing to open a new plant, facility or branch in the Commonwealth or that he actively participated in inducing to expand an existent plant or facility within the Commonwealth, provided that the above prohibition shall be invoked only when the recruitment or inducement is accomplished by a grant or loan of money or a promise of a grant or loan of money from the Commonwealth to the business or corporation recruited or induced to expand.
"(h)(1) Any individual who holds an appointive office in any political subdivision shall not have an interest in any contract or construction in which that political subdivision shall enter or have an interest.
"(2) Any person violating the provisions of this subsection shall be barred for a period of five years from engaging in any business or contract with any political subdivision or the Commonwealth or any of its agencies.
"(3) For purposes of this subsection the term `interest' shall not include the ownership of shares of stock in any corporation in an amount of 5% or less of the total issue for said corporation. 1978, Oct. 4, P.L. 883, No. 170, § 3, effective Jan. 1, 1979. "§ 404. Statement of financial interests required to be filed
"(a) Each public employee employed by the Commonwealth shall file a statement of financial interests for the preceding calendar year with the department, agency or bureau in which he is employed no later than May 1 of each year that he holds such a position and of the year after he leaves such a position. Any other public employee shall file a statement of financial interests with the governing authority of the political subdivision by which he is employed no later than May 1 of each year that he holds such a position and of the year after he leaves such a position.
"(b) Each candidate for public office shall file a statement of financial interests for the preceding calendar year with the commission prior to filing a petition to appear on the ballot for election as a public official. A petition to appear on the ballot shall not be accepted by an election official unless the petition includes an affidavit that the candidate has filed the required statement of financial interests with the commission.
"(c) Each candidate for public office nominated by a public official or governmental body and subject to confirmation by a public official or governmental body shall file a statement of financial interests for the preceding calendar year with the commission and with the official or body that is vested with the power of confirmation at least ten days before the official or body shall approve or reject the nomination.
"(d) No public official shall be allowed to take the oath of office or enter or continue upon his duties, nor shall he receive compensation from public funds, unless he has filed a statement of financial interests with the commission as required by this act.
"(e)(1) Any candidate for State or county-wide public office shall file a statement of financial interests with the commission pursuant to this act and shall file a copy of that statement with the Board of Elections in the county in which the candidate resides.
"(2) Any candidate for local official shall file a statement of financial interests with the commission pursuant to this act and shall file a copy of that statement with the governing authority of the political subdivision in which he is a candidate.
"(f) All statements of financial interest filed pursuant to the provisions of this act shall be made available for public inspection and copying during regular officer hours." 65 P.S. §§ 403, 404.
[5] The specific challenges advanced by appellants are these:

a. The paragraph 3(a) prohibition against using "public office to obtain financial gain . . ." is uncertain as to the time period during which it applies. That is, it is unclear whether the ban extends to former officer holders.
b. The term "financial gain" in paragraph 3(a) is impermissibly vague.
c. Paragraph 3(b) and the term "understanding" used therein is unclear. See Snider v. Thornburgh, supra.
d. The term "governmental body" used in paragraph 3(c) is uncertain of definition.
e. The terms "representation" and "associated" contained in paragraph 3(e) are vague.
f. Paragraph 3(d) in its entirety is vague.
g. Section 4 is unclear as to how often office holders must file their financial disclosure statements.