451 A.2d 514

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Robert MURPHY and John Filler.**

Superior Court of Pennsylvania.

Argued June 11, 1980.

Filed Oct. 1, 1982.

Petition for Allowance of Appeal Denied Jan. 20, 1983.

Marianne E. Cox, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Burton A. Rose, Philadelphia, for appellees.

Before PRICE, WICKERSHAM and LIPEZ, JJ.

LIPEZ, Judge:

This is a Commonwealth appeal from a pre-trial order dismissing all charges against the defendants, Philadelphia police detectives Robert Murphy and John Filler, on the ground that their due process rights were violated by a

pre-arrest delay of 32 months. We vacate the order, reinstate all charges, and remand for disposition of defendants' other pre-trial motions which remain outstanding.

The charges [1] against detectives Murphy and Filler arose out of an alleged beating of Amos Singleton on December 23, 1975, after a preliminary hearing held at the 14th police district on robbery charges then pending against Singleton. Murphy and Filler appeared at the hearing as the arresting officers. After the hearing, defendant Murphy and another policeman, Officer Fleming, led Singleton out to take him back to his cell. Meanwhile Singleton's lawyer, Daniel-Paul Alva, remained in the hearing room because he had another case listed.

After hearing sounds of a struggle outside, Alva ran out and saw Singleton doubled over. Alva questioned defendant Filler, who said Singleton had tried to escape. Murphy and Filler then decided to take Singleton to the 35th police district, in order to charge Singleton with escape. They also decided to ride to the 35th district in the back of the police van with Singleton.

Alva returned to the hearing room, where his other case was continued. Alva then drove his car quickly to the 35th district, arriving simultaneously with the police van and with Officer Fleming, who drove in a separate car. Defendants Murphy and Filler removed Singleton from the van. Singleton was unrecognizable, his entire face swollen and blood-covered. Murphy and Filler assisted Singleton into the Northwest Detective Division, which is in the same building as the 35th district. Sergeant Hill, who was on duty, ordered that Singleton be taken to the hospital, where he remained from December 23, 1975 to January 1, 1976, being treated for extremely serious injuries.[2]

1. The informations filed against defendants charged them with simple assault, 18 Pa.C.S. § 2701; aggravated assault, 18 Pa.C.S. § 2702; official oppression, 18 Pa.C.S. § 5301; and criminal conspiracy, 18 Pa.C.S. § 903.

2. Singleton was first taken to Albert Einstein Medical Center on December 23, 1975, but was transferred that evening to Philadelphia

At the time Singleton had been led into the Northwest Detective Division, Mr. Alva immediately told Sergeant Hill, in the presence of defendants Murphy and Filler, that he wished to file a complaint charging the defendants with beating Singleton in the back of the van. Alva gave a detailed statement, the gist of which was that Singleton had no visible injuries of any kind when Alva saw the defendants take Singleton into the van with his hands cuffed behind his back, while Singleton had obviously serious injuries when he emerged from the van with the defendants.

Two police detectives and a lieutenant were assigned to investigate both Alva's complaint and Singleton's alleged escape. In separate interviews on the day of the incident, Murphy and Filler both claimed that Singleton's injuries occurred during the alleged escape attempt, when Singleton kicked Officer Brennan and hit Murphy and Filler with an oil can, forcing Murphy and Filler to strike Singleton about the head with their blackjacks in order to subdue him. Both denied beating Singleton during the ride in the van. Other police witnesses were also interviewed. As a result of the investigation, Singleton was charged with escape and with assaulting Murphy, Filler and Corporal Brennan. Singleton was eventually acquitted of these charges.

On January 20, 1976 Singleton's family filed a private criminal complaint with the Philadelphia district attorney's office against Murphy and Filler, charging them with beating Singleton in the rear of the police van. On November 30, 1977 the district attorney's office closed the investigation arising out of the Singleton complaint. About a month later, the district attorney's office began a review of previously closed police brutality cases, including Singleton's. Reinvestigation of the Singleton complaint led to the arrest

General Hospital. The diagnoses of the doctors who examined Singleton at Einstein and PGH included—among other things—multiple lacerations of the face, subcutaneous hematoma (secondary to trauma), fractured cheekbone, fractured leg, fractured finger, perforated eardrum, and myoglobinuria, which is a rare condition in which muscle injury is so severe that muscle tissue enters the urine.

of Murphy and Filler on the charges involved here on July 27, 1978.

After disposition of various pre-trial matters during the ensuing months, defendants filed omnibus pre-trial motions, raising numerous issues. One issue which was not raised was whether the pre-arrest delay violated due process. A hearing on the omnibus pre-trial motions began on March 19, 1979. On the first two days of the hearing, while defendants' counsel argued other issues, the trial judge himself persistently raised the question of whether the pre-arrest delay in this case had violated the defendants' due process rights. The prosecutor continually pointed out that the issue had not been raised by defendants and was consequently not before the court. Nevertheless, the trial judge eventually announced that he would hear evidence on the issue. Defense counsel was given the opportunity to gather evidence, which was presented over a period of several days, the hearing being concluded on March 28, 1979. On November 7, 1979 the trial judge filed an order dismissing all charges against defendants on the ground that the pre-arrest delay had violated their due process rights. The Commonwealth filed these appeals, which have been consolidated. Pa.R.A.P. 513. We vacate the dismissal order, both because the trial judge improperly raised the issue sua sponte, and because he decided it erroneously.

I.

Since *Wiegand v. Wiegand*, 461 Pa. 482, 337 A.2d 256 (1975), which reversed this court's decision because it was based on an issue this court had raised sua sponte, our Supreme Court has continually "criticized the practice of courts reaching for issues not presented by the litigants." *Commonwealth v. Branham*, 467 Pa. 605, 607–08 n. 3, 359 A.2d 766, 767 n. 3 (1976) (citations omitted). In several instances, the reasoning of *Wiegand* has been applied to overturn trial court determinations based on issues raised sua sponte. *Commonwealth v. Waters*, 491 Pa. 85, 98, 418 A.2d 312, 318–19 (1980); *Butler Area School District v.*

*Butler Education Association,* 481 Pa. 20, 21, 391 A.2d 1295 (1978); *In re Duncan Trust,* 480 Pa. 608, 613, 391 A.2d 1051, 1054 (1978); *Coleman v. Board of Education of School District of Philadelphia,* 477 Pa. 414, 423, 383 A.2d 1275, 1280 (1978); *Wesolek v. Shaler Township,* 56 Pa.Commw.Ct. 332, 335–36, 424 A.2d 1008, 1009 (1981). Most recently, in *Witt v. Commonwealth, Department of Banking,* 493 Pa. 77, 425 A.2d 374 (1981), the six participating justices unanimously agreed that the Commonwealth Court (which had sat as trial court in that case) had erred in deciding an issue sua sponte. The opinion in support of remand (Nix, J., joined by Flaherty and Kauffman, JJ.) stated, "We reaffirm our often stated admonition that courts should confine their consideration to issues presented by the parties and not usurp the role of the litigant in the management of the lawsuit. *Cf. Weigand v. Weigand* [sic], [*supra*]." 493 Pa. at 82–83, 425 A.2d at 376. The opinion in support of affirmance (Roberts, J., joined by O'Brien, C.J. and Larsen, J.) explicitly agreed on this point. 493 Pa. at 79 n. *, 425 A.2d at 374 n. *. Here the trial judge raised the due process issue sua sponte, and that fact alone requires us to vacate his order.[3]

**3.** While the Commonwealth's brief points out that the due process issue was raised sua sponte by the trial judge, the Commonwealth has not requested that we overturn the order on that basis. We may do so, however, even without their requesting it. *See Benson v. Penn Central Transportation Company,* 463 Pa. 37, 42–43, 342 A.2d 393, 395–96 (1975). Although we find this a sufficient basis in itself to vacate the order, we are not precluded from going on to hold, as we do in part II, that the incorrect determination on the merits provides an alternative, independent basis for our decision. *See Coleman v. Board of Education of School District of Philadelphia,* 477 Pa. 414, 423, 383 A.2d 1275, 1280 (1978). This is an especially appropriate case to provide this additional independent reason for the decision, because some recent Supreme Court cases, while not overruling the unanimous ruling made in *Witt v. Commonwealth, Department of Banking, supra,* have created confusion and uncertainty concerning what the Court might do in the future in the area of sua sponte determination. *See Pennsylvania State Association of Township Supervisors v. Thornburgh,* 496 Pa. 324, 326–27 n. 2, 437 A.2d 1, 2 n. 2 (1981), *rearg. den'd* (opinion in support of affirmance by O'Brien, C.J., joined by Kauffman, J.); *Snider v. Thornburgh,* 496 Pa. 159, 175–76 n. 8, 436 A.2d 593, 601 n. 8 (1981) (opinion by O'Brien, C.J., fully joined by Kauffman, J., joined in pertinent part by Nix, J., joined in all except pertinent part by Larsen and Flaherty, JJ.).

## II.

 The trial judge's determination of the due process issue was also incorrect on the merits. The primary guarantee against the bringing of overly stale criminal charges is the statute of limitations, which provides predictable, legislatively enacted limitations on prosecutorial delay. *United States v. Lovasco,* 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977). The role of the Due Process Clause in protecting against oppressive pre-arrest or pre-indictment delay is limited. *Id.* An accused person who claims a due process violation from pre-arrest delay must show both that the delay caused him substantial prejudice, and that the prosecution's reasons for the delay were improper. Only after the substantial prejudice is established should the court inquire into the reasons for the delay, for it is only such prejudice which "makes a due process claim concrete and ripe for adjudication." *United States v. Lovasco, supra; Commonwealth v. Daniels,* 480 Pa. 340, 356, 390 A.2d 172, 181 (1978).[4] We agree with the Commonwealth that the court below erred in finding that defendants demonstrated the requisite prejudice, and hence we need not reach the Commonwealth's claim that the court also erred in its determination on the reasons for the delay.

4. Defendants' brief points out that one federal district court has stated: "As we interpret *United States v. Dukow,* 453 F.2d [1328,] 1330 [ (3d Cir. 1972) ], *either* substantial prejudice to a defendant's right to a fair trial, *or* delay as an intentional device by the prosecution to gain a tactical advantage over the accused, must be shown in order to make out a due process violation under the criteria of *United States v. Marion* [, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) ]." *United States v. Clark,* 398 F.Supp. 341, 350 (E.D.Pa.1975) (emphasis in original). Examination of the Court of Appeals' opinion in *Dukow* show that *Clark* correctly interpreted *Dukow,* but that *Dukow* itself misinterpreted the United States Supreme Court's opinion in *Marion.* The statement in *Dukow* is inconsistent with both *Marion* and the U.S. Supreme Court's later opinion in *United States v. Lovasco, supra,* and it is the Supreme Court's opinions which are controlling. *See Cox v. Dravo Corporation,* 517 F.2d 620, 627 (3d Cir. 1975), *cert. den'd,* 423 U.S. 1020, 96 S.Ct. 457, 46 L.Ed.2d 392; *cf. Mackey v. Adamski,* 286 Pa.Super.Ct. 456, 465–66, 429 A.2d 28, 32–33 (1981); *reconsideration den'd; see also United States v. City of Philadelphia,* 644 F.2d 187, 192, n. 3 (3d Cir. 1980), *reh'g den'd* (1981).

The trial judge found in his opinion that the defendants were never questioned under any circumstances making it reasonable for them to conclude that they were suspects. The Commonwealth contends, and we agree, that this "finding" [5] has no support in the record. In fact, the record flatly contradicts it.

As a result of Mr. Alva's complaint, defendants were separately interviewed on the day of the incident as to whether they had beat Singleton in the rear of the van. Both Murphy and Filler placed on record their position that all of Singleton's injuries had occurred during the alleged escape attempt at the 14th district, before Singleton got back into the van with them. Defendants named a number of police witnesses who would support their position that Singleton already had his injuries when he got into the van. All police witnesses named by the defendants were also interviewed at that time. It could hardly be clearer that defendants were put on notice at the time of the alleged crime that they were suspects, and they had full opportunity then to obtain whatever witnesses were available for their defense. *See Commonwealth v. Crawford,* 468 Pa. 565, 569–70, 364 A.2d 660, 663 (1976). Moreover, defendants were the subjects of a misconduct investigation by the Staff Inspectors Office for the alleged beating of Singleton in the

5. The trial judge made no findings of fact at the conclusion of the hearing. While Rule of Criminal Procedure 323(i) is inapplicable to the hearing on the due process issue since it did not involve suppression of evidence, the better course would have been to make specific findings of fact and conclusions of law at the end of the evidentiary hearing below, in order to facilitate the proper deference by an appellate court to the trial judge's fact-finding function. *Cf. Commonwealth v. Jackson,* 483 Pa. 101, 104–05, 394 A.2d 930, 931 (1978). The only factual "findings" we have here are those scattered throughout the trial judge's opinion, written long after the hearing. *Cf. Commonwealth v. Hunt,* 280 Pa.Super.Ct. 205, 208 n. 2, 421 A.2d 684, 685 n. 2 (1980) (appellate review hampered because "the suppression judge did not make separate findings of fact and conclusions of law, but instead made a lengthy statement, in which observations concerning the evidence are scattered among discourses on the importance of adequate law enforcement and a variety of other topics"). This renders appellate review particularly difficult in a case such as this, in which the record runs to thousands of pages.

van, and they needed exactly the same witnesses to defend against the misconduct charge.

In light of all this, the statement in the trial judge's opinion that defendants "were never aware of any investigation of themselves with regard to the allegations of Singleton" is difficult to understand. As best we can determine, the trial judge apparently believed that defendants were deprived of an opportunity to locate witnesses in their favor and to record their own recollection of events, because they relied on the fact that the district attorney's office, by ultimately deciding to prosecute Singleton for escape, had indicated acceptance of the defendant's version of the events of December 23, 1975. By the time the decision to prosecute Singleton was made, however, defendants had already been accorded full opportunity to give their accounts and name their supporting witnesses when they were investigated immediately after the alleged beating in the van. The interviews with both the defendants and all the witnesses they named are preserved in the lengthy police investigation report, which the Commonwealth introduced in the court below. Moreover, the prosecution of Singleton provided defendants even more opportunities to record their own recollections, and to name their supporting witnesses, concerning the question of whether they had beat Singleton in the van, because defendants were extensively cross-examined on this point at a number of proceedings in connection with the prosecution of Singleton.

Besides being overwhelmingly contradicted by the record, the trial judge's finding that defendants never knew they were being investigated seems completely gratuitous, going far beyond what defendants themselves tried to establish by the evidence presented at the hearing below. Defendants attempted to show that there were potential witnesses whose recollections had diminished since the time of the alleged beating. Defendants did not claim their own memories had faded since the time of the incident; nor did they contend that any memory loss had been suffered by any of the witnesses whom they had named during the investiga-

tions of themselves, or whom they had named at the various proceedings in the prosecution of Singleton. Instead, at the hearing below defendants presented the testimony of six other policemen, never previously mentioned as witnesses, who defendants recall were at the 14th police district on December 23, 1975. Of these six officers, four testified in the hearing below that they were not present at the scene on that day, or that they could not recall if they were. Of the two remaining, one officer testified that he witnessed the struggle in the 14th district yard, but could not recall whether he had seen Singleton's face before Singleton was placed in the van. The other officer testified that while he did not witness the struggle, he saw Singleton's face bleeding somewhat before being put into the van, but the officer could not recall how extensive Singleton's injuries appeared at the time.

Clearly there is even less substance to defendants' claim than the one our Supreme Court rejected in *Commonwealth v. Daniels,* 480 Pa. 340, 357, 390 A.2d 172, 181 (1978), stating: "Much more substantial claims of impaired memory have been rejected by other courts. See, *e.g., United States v. Juarez,* 561 F.2d [65,] 68–69 [ (7th Cir. 1977) ] and cases cited therein; *United States v. Finkelstein,* 526 F.2d 517, 526 (2d Cir. 1975), *cert. denied sub nom. Scardino v. United States,* 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976)." [6] Accordingly, we must vacate the lower court's order, and remand for disposition of the pre-trial motions which have not been disposed of previously.

**6.** The Commonwealth attempted to make an additional showing that defendants were not prejudiced by the delay, by showing that defendants had available a number of witnesses who had given accounts supporting defendants' position when defendants were being investigated, as well as at various proceedings in the prosecution of Singleton. When the Commonwealth placed these witnesses on the stand, the trial judge made a number of rulings which we do not understand. However, we do not believe we need consider whether the Commonwealth was successful in making an additional showing of lack of prejudice to the defendants. Any such showing would be superfluous, in light of the fact that defendants had not demonstrated anything even approaching substantial prejudice with their witnesses.

256

Order vacated, all informations against defendants reinstated, and case remanded for further proceedings.

WICKERSHAM, J., files a concurring opinion.

PRICE, J., dissents.

WICKERSHAM, Judge, concurring:

I concur in the result.

 The lower court dismissed all charges and ordered both defendants discharged on the ground that the 31 month delay between the crime and the defendants' arrest violated due process. Defendants, who knew immediately after the incident that they might be subject to criminal prosecution, and were themselves complainants in a cross-prosecution against the complainant here, established, at most, that witnesses' recollections were dimmed. This is a patently inadequate basis for dismissal.

The primary guarantee against bringing overly stale criminal charges is the statute of limitations; the Due Process Clause plays a limited role in protecting against prejudicial delay. *United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).

In *United States v. Marion,* 404 U.S. 307 [92 S.Ct. 455, 30 L.Ed.2d 468] (1971), this Court considered the significance, for constitutional purposes, of a lengthy preindictment delay. We held that as far as the Speedy Trial Clause of the Sixth Amendment is concerned, such delay is wholly irrelevant, since our analysis of the language, history, and purposes of the Clause persuaded us that only 'a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge . . . engage the particular protections' of that provision. Id., at 320. We went on to note that statutes of limitations, which provide predictable, legislatively enacted limits on prosecutorial delay, provide ' "the primary guarantee against bringing overly stale criminal charges." ' Id., at 322, [92 S.Ct. at 464] quoting *United States v. Ewell,* 383 U.S. 116 [86 S.Ct. 773, 15 L.Ed.2d 627]

(1966). But we did acknowledge that the 'statute of limitations does not fully define [defendants'] rights with respect to the events occurring prior to indictment,' 404 U.S. at 324, [92 S.Ct. at 465] and that the Due Process Clause has a limited role to play in protecting against oppressive delay.

. . . .

'[W]e need not ... determine when and in what circumstances actual prejudice resulting from preaccusation delays requires the dismissal of the prosecution. Actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution.' Id., at 324-325 [92 S.Ct. at 465-66] (Footnotes omitted). Thus *Marion* makes clear that proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused.

*Id.* at 788-90, 97 S.Ct. at 2047-48.