J-S03034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| THOMAS MACKIE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DIANE MACKIE | : | No. 666 WDA 2021 |

Appeal from the Order Entered May 11, 2021
In the Court of Common Pleas of Washington County Civil Division at
No(s):  2013-6350

BEFORE:  LAZARUS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED: MARCH 9, 2022**

In this never-ending dispute,[1] Thomas Mackie (Husband) appeals from

the contempt order entered in the Court of Common Pleas of Washington

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] We note that this is the sixth appeal involving equitable distribution in this divorce.  ***Mackie v. Mackie***, No. 465 WDA 2019, 2019 WL 7341798, at *1 (Pa. Super. Dec. 30, 2019) ("This matter has a long and tortured procedural history."  Appeal involved Husband's overdue arrearages which we held became subject to full range of collection remedies, including the attachment and seizure of assets held in financial institutions.); ***Mackie v. Mackie***, No. 442 WDA 2019, 2019 WL 6330560, at *3 (Pa. Super. Nov. 26, 2019) (involved Husband's failure to pay the $2,000 fine imposed by court order.  "Particularly in light of Husband's ongoing contemptuous conduct throughout the pendency of this matter, we are unable to conclude that the trial court abused its discretion by holding Husband in contempt for his failure to pay the fine…"); ***Mackie v. Mackie***, No. 1499 WDA 2018, 2019 WL 4864073, at *1 (Pa. Super. Oct. 2, 2019) (In an appeal involving the awarding of APL, "the proceedings have been tortuous and acrimonious"); ***Mackie v. Mackie***, No. 714 WDA
*(Footnote Continued Next Page)*

County (trial court) directing him to pay $7,500 into the prothonotary's office to be held until the conclusion of equitable distribution in this divorce action. After review, we vacate and remand with instructions.

**I.**

**A.**

In October 2013, Husband filed for divorce from Diane Mackie (Wife). After two years of contentious litigation, a hearing master filed a 54-page recommendation and report. Relevant here, the master apportioned 50 percent of Husband's military pension to Wife, with distribution to be accomplished through her preparing a qualified domestic relations order (QDRO) with Husband's cooperation. In April 2017, the trial court adopted the master's report except for its valuation of Husband's business interest in a limited liability company. The trial court entered a divorce decree the following month on May 19, 2017.

The following year, a dispute arose over Husband failing to give Wife his "high-3 amount," which would be his military retirement pay as calculated by taking the monthly amount that is the average of his highest 36 months of

_____

2017, 2018 WL 2016377, at *1 (Pa. Super. May 1, 2018) (stating that "the parties engaged in protracted and acrimonious litigation including, *inter alia*, filing a combined 23 petitions for special relief and eight petitions for contempt, and engaging in three discovery conferences."); ***Mackie v. Mackie***, No. 1195 WDA 2016, 2017 WL 1326520, at *1 (Pa. Super. Apr. 11, 2017) (quashing the appeal as interlocutory).

military basic pay. *See* 10 U.S.C. § 1407(c). On March 26, 2018, the trial court entered an order directing Husband to provide Wife with any information that she needed to carry out the division of his military pension. When Husband failed to do so, Wife filed a motion for contempt. As a result, on April 18, 2018, the trial court issued a rule to show cause why Husband should not be held in contempt for failing to comply with its prior order.

At the hearing on the rule, which was held on May 10, 2018, Husband's counsel appeared but informed the court that Husband could not attend because he could not get time off from his work. Unsatisfied with the information given by counsel at the hearing, the trial court entered an order the next day (1) making the rule absolute, (2) issuing a contempt citation against Husband for failing to provide his "high-3 amount," and (3) scheduling a hearing on the contempt citation for May 18, 2018.

At the contempt hearing, Husband provided copies of his W-2 forms from 2011 to 2013 and claimed that these years represented his highest annual income from the military for a period of three years before he separated from Wife. Finding the information deficient, the trial court concluded that Husband knew his "high-3 amount" but was willfully failing to provide it. Accordingly, on May 21, 2018, the trial court entered an order finding Husband in contempt. As stated in the order, Husband could purge himself of contempt by providing Wife with documentary evidence of his "high-

3 amount" by June 4, 2018; otherwise, he was to report to jail on June 5, 2018.

Before the deadline, Husband's counsel emailed Wife various documents. None of the documents, though, contained his "high-3 amount." As a result, the trial court scheduled another hearing to address Husband's noncompliance. After the hearing, the trial court entered an order on July 9, 2018. In its order, the trial court reviewed the information that counsel gave to Wife and explained why it did not meet the statutory definition of the "high-3 amount." Thus, because of Husband's willful and continued noncompliance, the trial court (1) issued a bench warrant against Husband for his failure to comply with its May 21, 2018 order, and (2) ordered that the purge conditions in that order would remain in effect.

**B.**

For the next three years, the trial court's orders relating to the military pension remained in effect, as Husband made no further attempts to provide Wife with his "high-3 amount."[2] Eventually, on April 27, 2021, Husband filed a motion to purge contempt, vacate the trial court's orders and lift his bench

---

[2] In November 2018, Husband moved to have the orders vacated, again claiming that he had provided sufficient information. On November 14, 2018, the trial court denied the motion and again clarified the information that Husband needed to provide about his "high-3 amount."

warrant.[3]   In his motion, Husband provided a letter from the Department of the Navy dated January 26, 2021, which confirmed his "high-3 amount."  Wife answered Husband's motion but did not seek sanctions.

After hearing arguments on the motion,[4] the trial court entered a memorandum and opinion on May 11, 2021, granting in part and denying in part Husband's motion.  The trial court first found that Husband had purged himself of the contempt orders and bench warrant by finally providing his "high-3 amount," but not before admonishing him for his prolonged failure to provide the necessary documentation.

> After over four (4) years of non-compliance with the pension provision (and other provisions) of the parties' Equitable Distribution Order, [Husband] finally complied with the subject Orders by providing the necessary document to [Wife] contemporaneously with his Motion.  [Husband] lives out of state and has avoided traveling to Pennsylvania since the bench warrant was issued, fearful of being incarcerated instead of simply complying with the subject Orders.  [Husband] now comes before the Court with his request to lift the bench warrant so he can travel to Pennsylvania and see his stepson who resides in the area.  The Court is deeply concerned that [Husband] has, over the years, purposely and intentionally thwarted the proper conclusion of this action in Divorce by failing to comply with not only the Orders

---

[3] For reasons unclear, it does not appear that Husband's motion was filed with the prothonotary or entered in the case's docket, even though it appears he served copies on the trial court and Wife.  The trial court later granted his application for modification of record and ordered the prothonotary to accept the filing of his original motion.

[4] We note that the transcript of the hearing is not included in the certified record.  Under Rule of Appellate Procedure 1911, it is the responsibility of Husband, as the appellant, to order all transcripts necessary for the disposition of his appeal.  *See* Pa.R.A.P. 1911.

which are the subject of his Motion but also other aspects of the parties' Equitable Distribution and that his conduct in this action will continue into the future. Nevertheless, Plaintiff has complied with the Orders of May 21, 2018 and July 9, 2018 and he has purged himself of the contempt and the bench warrant issued against him can be lifted.

Trial Court Memorandum and Order (TCMO), 5/11/21, at 2 (unpaginated)

(footnote omitted).

However, this was not the end of the matter. The trial court continued:

…[B]ecause [Husband] has shown no inclination to act in other than an obdurate manner regarding this action and because the Equitable Distribution Order has not been fully complied with by [Husband], the Court is constrained to utilize its power of a Court in a Divorce action having "full equity power and jurisdiction." 23 Pa.C.S.A. [§] 3323(f). **Prol v. Prol**, 935 A.2d 547, 533 (Pa. Super. 2007). Moreover, 23 Pa.C.S.A. (Equitable Division of marital property) affords the Court broad powers to enforce compliance with an Order of Equitable Distribution. **See** 23 Pa.C.S.A. [§] 3502(e); **see also Miller v. Miller**, 983 A. 2d 736, 743-744 (Pa. Super 2009). [Husband] should make no mistake in understanding that the Court condemns, in the strongest terms, his failure to reasonably act in completing equitable distribution of the marital estate particularly when a final unappealable order has long ago been issued. His antics are not tactics, **but are the very definition of vexatious and obdurate conduct during the pendency of a legal action.**

TCMO at 2-3 (unpaginated) (emphasis added).

As a result, the trial court entered an order providing, in relevant part,

as follows:

4. [Husband] shall, within fourteen days of the date of this Order, deposit with the Prothonotary of Washington County at the above captioned action the sum of $7,500. Said monies will be held by the Prothonotary until the conclusion of equitable distribution in this action. **These monies serve as security for a determination of monetary sanctions by the Court against [Husband] in this action.**

5. Upon conclusion of the distribution of property, as already ordered by the Court in this action, [Husband] may Petition the Court for a release of any and all remaining funds which he has paid into the Office of the Prothonotary which have not been Ordered as a sanction against the Plaintiff.

TCMO at 4 (unpaginated) (emphasis added).

Husband timely appealed from the order,[5] and both he and the trial court complied with Pa.R.A.P. 1925. On appeal, he raises five issues for review:

1. Whether the lower court erred or abused its discretion in that— notwithstanding the lower court's finding that [Husband] had purged himself of contempt and the bench warrant issue against him could be lifted—the lower court required as a "condition precedent" to lifting the bench warrant, [Husband] "pay into the Office of the Prothonotary the sum of $7,500, to be held in escrow."

2. Whether the lower court erred or abused its discretion in requiring yet another purge "condition" following its finding that [Husband] had already purged himself of any prior contempt orders.

3. Whether the lower court erred or abused its discretion in imposing a penalty upon [Husband] based purely on speculation and without any prior due process.

_____

[5] On July 21, 2021, this Court directed Husband to show cause why his appeal should not be quashed as taken from an interlocutory order. Husband responded that, notwithstanding the order's language, the trial court's dominant purpose in having him deposit $7,500 was to sanction him for past violations and deter future violations. "An order imposing sanctions … is considered a final order and is therefore appealable." *Stewart v. Foxworth*, 65 A.3d 468, 471 (Pa. Super. 2013) (citation omitted). Here, the trial court had Husband deposit $7,500 as security toward "monetary sanctions" to be determined by the trial court. Under such circumstances, Husband does not need to wait for further court order. Thus, we address the merits.

4. Whether the lower court erred or abused its discretion in relying on 23 Pa.C.S.A. § 3323(f), [**Prol**], 23 Pa.C.S.A. § 3502(e), and [**Miller**] as authority for the imposition of a monetary sanction prior to, or without a hearing or procedural due process.

5. Whether the lower court erred or abused its discretion in entering a sanction, *sua sponte*, which sanction went well beyond the relief requested by [Husband], was never requested by [Wife], and was never at issue before the lower court, in violation of the holdings in **Wiegand v. Wiegand**, 461 Pa. 482, 337 A.2d 256 (1975); **Witt v. [Dep't of Banking]**, 493 Pa. 77, 425 A.2d 374 (1981); and **Commonwealth v. Murphy**, 305 Pa. Super. 246, 451 A.2d 514 (1982).

Husband's Brief at 7-8.

# II.

## A.

We quickly dispose of Husband's first two issues, both of which are premised on his belief that payment of the $7,500 was a "condition precedent" to the lifting of the bench warrant. His basis for this belief is the trial court stated in its memorandum that it would "lift the current bench warrant but require that, **as a condition precedent**, [Husband] pay into the Office of the Prothonotary of Washington County the sum of $7,500, to be held in escrow[.]" TCMO at 3 (unpaginated). (Emphasis added.)

However, in the trial court's accompanying order, the lifting of the bench warrant was not conditioned on Husband's payment. That order provided, in relevant part:

1. **The BENCH WARRANT issued against [Husband] in the above captioned action by Order dated July 9, 2018 is HEREBY LIFTED**.

- 8 -

2. [Husband] is not now determined to be in contempt, as indicated in the Orders of May 21, 2018 and July 9, 2018, as he has purged himself of the contempt.

*Id*. at 4 (unpaginated) (emphasis in original).

Indeed, in its subsequent Rule 1925 opinion, the trial court clarified that the bench warrant was lifted by its order, and that the $7,500 ordered to be placed in escrow was not a condition precedent to the bench warrant being lifted. **See** Pa.R.A.P. 1925(a) Opinion, 7/7/21, at 4. Thus, because the trial court's order did not condition the lifting of the bench warrant on payment of the $7,500, Husband's first two issues are moot.

**B.**

In his remaining three issues, Husband alleges that the trial court violated his due process rights by *sua sponte* directing him to pay $7,500 as security for later a determination of monetary sanctions. In his view, the trial court needed to give him notice and an opportunity to respond before it could order him to deposit $7,500 toward prospective monetary sanctions.

As noted, the trial court stated in its memorandum and opinion that it was using its powers in a divorce action under 23 Pa.C.S. §§ 3323(f) in ordering Husband to deposit the $7,500 with the prothonotary. That section provides:

> In all matrimonial causes, the court shall have full equity power and jurisdiction and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this part and may grant such other relief or remedy as equity and justice require against either party or against any third person over whom the court has jurisdiction

and who is involved in or concerned with the disposition of the cause.

23 Pa.C.S. § 3323(f).

The trial court also noted that it enjoys broad powers to enforce compliance with an equitable distribution order under 23 Pa.C.S. § 3502(e), which provides:

**(e) Powers of the court.--**If, at any time, a party has failed to comply with an order of equitable distribution, as provided for in this chapter or with the terms of an agreement as entered into between the parties, **after hearing**, the court may, in addition to any other remedy available under this part, in order to effect compliance with its order:

(1) enter judgment;

(2) authorize the taking and seizure of the goods and chattels and collection of the rents and profits of the real and personal, tangible and intangible property of the party;

(3) award interest on unpaid installments;

(4) order and direct the transfer or sale of any property required in order to comply with the court's order;

(5) require security to insure future payments in compliance with the court's order;

(6) issue attachment proceedings, directed to the sheriff or other proper officer of the county, directing that the person named as having failed to comply with the court order be brought before the court, at such time as the court may direct.  If the court finds, after hearing, that the person willfully failed to comply with the court order, it may deem the person in civil contempt of court and, in its discretion, make an appropriate order, including, but not limited to, commitment of the person to the county jail for a period not to exceed six months;

(7) award counsel fees and costs;

(8) attach wages; or

(9) find the party in contempt.

23 Pa.C.S. § 3502(e) (emphasis added).

In its Rule 1925 opinion, however, the trial court cited neither Sections 3323(f) nor 3502(e) in explaining its reasoning for directing Husband to deposit $7,500 as security for monetary sanctions. Instead, the trial court framed Husband's appeal as flowing from the contempt order, stating that it "acted within its discretion in lifting the bench warrant, while placing safeguards in place to compel compliance with previous Court orders that [Husband] has otherwise avoided, ignored, and/or flagrantly disregarded." Pa.R.A.P. 1925(a) Opinion, 7/7/21, at 2.

Notably, in addressing Husband's due process challenge, the trial court analyzed the issue under the procedural requirements for a finding of civil contempt:

> [Husband] argues that this Court's Order, *sua sponte*, directing [him] to deposit $7,500 to the [prothonotary] violated his due process rights. [Husband's] arguments are without merit. The Pennsylvania Superior Court has held that "contempt proceedings which are predicated upon the violation of an order which has been served on the contemnor and entered after a full hearing on the merits thereof may be commenced by attachment, and due process requires no more than notice of the violations alleged and opportunity for explanation and defense." **Rouse** [**Phila. Inc. v. Ad Hoc '78**, 417 A.2d 1248, 1259 (Pa. Super. 1978)] (Quoting **Riccobene Appeal**, [268 A.2d 104 (Pa. 1970)]....

Pa.R.A.P. 1925(a) Opinion, 7/7/21, at 5-6.

- 11 -

Whether the trial court was exercising its power in a divorce action under Sections 3323(f) and 3502(e) or whether it was exercising its civil contempt power to enforce its previous degree, notice and a hearing would have to be given when the trial court imposed sanctions for Husband's past obdurate conduct. However, until that occurs, there is nothing to appeal. That means the only issue before us is whether Husband received notice of the $7,500 to be deposited with the Prothonotary. Regardless of how the trial court characterizes its order, Husband was entitled to notice and hearing that he was going to be required to pay $7,500 as security for any future sanctions.

Accordingly, we vacate paragraphs four and five of the trial court's May 11, 2021 order directing Husband to deposit $7,500 with the prothonotary and remand for the trial court to determine whether Husband should be required to post security or for sanctions to be imposed or be held in civil contempt, in accord with all the procedural due process requirements for such a determination(s).

Order vacated in part; case remanded with instructions. Jurisdiction relinquished.

Judge Lazarus joins the memorandum.

Judge Sullivan concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/9/2022</u>