485 A.2d 1147

**COMMONWEALTH of Pennsylvania**

v.

**Leroy FRATTAROLA, Donald Frattarola, Charles Sexton, Nicholas Catania, and Margaret Jacono.**

**Appeal of PHILADELPHIA NEWSPAPERS, INC., Westinghouse Broadcasting and Cable, Inc., and Central States Publishing, Inc.**

Superior Court of Pennsylvania.

Argued Oct. 3, 1983.

Filed Dec. 12, 1984.

412

Katherine L. Hatton, Philadelphia and Edward J. Carney, Jr., Media, for appellants.

William J. Davies, Assistant District Attorney, and John A. Reilly, District Attorney, Media, for Commonwealth, appellee.

Michael F. Coll, Media, for Leroy Frattarola, appellee.

Frank J. Marcone, Media, for Donald Frattarola, appellee.

William J. Winning, Media and Bruce L. Thall, Philadelphia, for Catania, appellee.

W. Donald Sparks, Media, for Jacono, appellee.

Before WICKERSHAM, WIEAND and LIPEZ, JJ.

WICKERSHAM, Judge:

In the action underlying this appeal by Philadelphia Newspapers, Inc., Westinghouse Broadcasting and Cable, Inc. and Central States Publishing, Inc. (hereinafter, "the media"), the defendants, several of whom were public officials and prominent politicians, were charged, *inter alia*, with illegally interfering with a Delaware County primary election in May of 1981. At the preliminary hearing, the chief Commonwealth witness, Richard T. Burke, testified extensively as to the content of conversations he had had with several of the defendants. Many of these conversations had been electronically intercepted and recorded, allegedly with the consent of Mr. Burke. The tapes themselves were not played at the preliminary hearing.

On July 30, 1982, the Commonwealth filed a motion seeking a pretrial hearing to determine the authenticity, audibility, integrity, and identification of the aforementioned tape recordings, pursuant to *United States v. Starks*, 515 F.2d 112 (3d Cir.1975).[1] The hearing on this motion, commencing on October 12, 1982, was closed to the press and public on the motion of defendant-appellee Catania, which motion was joined orally by the other defendants and the Commonwealth, over the objections of Philadelphia

---

1. In *United States v. Starks*, 515 F.2d 112 (3d Cir.1975), the Court of Appeals for the Third Circuit held that a party intending to offer recordings into evidence at trial must "produce clear and convincing evidence of authenticity and accuracy as a foundation for the admission of such recordings." *Id.* at 121, *quoting United States v. Knohl*, 379 F.2d 427, 440 (2d Cir.1967), *cert. denied*, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967).

Newspapers, Inc. and Central States Publishing, Inc. The hearing resumed on October 13, 1982, at which time Westinghouse Broadcasting and Cable, Inc. requested access, which request was denied by the court.[2] On October 13, 1982, Philadelphia Newspapers and Central States Publishing appealed to this court from the lower court's order denying public access to the pretrial *Starks* hearing. On October 14, 1982, in a per curiam order, this court remanded the case to the lower court so that the media could request access to the transcripts of the already-concluded hearing. This court advised the lower court to consider any less restrictive alternatives before denying the media access to the transcripts.

On October 13, 1982, the lower court entered an order dismissing all charges against Donald and Leroy Frattarola and Charles P. Sexton, Jr. The court left one count each against defendants Catania and Jacono. Subsequently, on January 4, 1983, the lower court entered an order dismiss-

---

2. The order closing the hearing to the press and public was entered on October 13, 1982 and reads as follows:

> AND NOW, to with[sic], this 13th day of October, 1982, having considered the Motion for Closure of certain aspects of proceedings undertaken in connection with the Commonwealth's Motion for Hearing in Limine;
>
> And it appearing that the prejudice to defendants from media coverage disseminated to potential jurors in this case is substantial, and would likely result in the inability of defendants to be tried before a fair and impartial jury;
>
> And it further appearing that the purpose of the *Starks* hearing is merely to determine questions separate and apart from the relevance, materiality, and ultimate admissibility of any of the electronically intercepted recordings at any trial on the merits, should one be held;
>
> It shall be and hereby is ORDERED, ADJUDGED and DECREED that (1) those aspects of the *Starks* hearing dealing with the playing of tape recordings, provision of transcriptions allegedly made therefrom, and any testimony relating to the content of those recordings shall be and hereby are closed to the public; (2) the record of those proceedings which deals with the content of the tapes, transcriptions allegedly made therefrom, and any testimony respecting the content of the tapes shall be and hereby is sealed; and (3) this Order shall remain in full force and effect until further Order of this Court.

ing the remaining charges against Catania and Jacono under the de minimis provisions of the Crimes Code.[3]

On November 22, 1982, the lower court heard the media's motion to permit access to the transcripts of the *Starks* hearing and the tape recordings. The court denied and dismissed the motion on January 4, 1983. The media filed a notice of appeal to this court on February 3, 1983.

## MOOTNESS

■ Before proceeding with the merits of this appeal, we must consider a threshold question: whether this appeal is moot because of the termination of the underlying criminal prosecution.[4]

As we have already noted, all criminal charges against all defendants in the underlying action have been dismissed. Parts of the record and transcripts of the tapes remain sealed, however. Therefore, we believe that the controversy is not moot. If we reverse the order of the lower court, our decision will have the effect of granting access to the press and public to the transcripts in question. If we affirm the order of the lower court, the transcripts will remain sealed.

We are here presented with a controversy capable of repetition, yet evading review. *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310, 313 (1911). By their very nature, closure orders often may not be subject to review until after the underlying action is completed. In *United States v. Cianfrani*, 573 F.2d 835 (3d Cir.1978), the Court of Appeals for the Third Circuit noted:

3. Act of December 6, 1972, P.L. 1482, No. 334, § 1. As amended, Act of June 22, 1978, P.L. 494, No. 73, § 1; 18 Pa.C.S.A. § 312.

4. Appellants state this threshold issue as follows:
Is the denial of the constitutional right of the press and public of access to judicial records in this case one which is capable of repetition yet evading review and thus not subject to the mootness doctrine although the charges against the defendants have been dismissed?
Brief for Appellants at 3.

[R]eview of a closure order similar to that issued in this case generally must come after the pretrial hearing is over, and often must come after the underlying criminal proceeding is over as well. To deny review because those underlying proceedings have come to an end would make it difficult for this court ever to review orders that are of great importance to fundamental rights, yet that are by their nature often of short duration. Thus, we believe that the order of the court closing the hearing and sealing the record is one capable of repetition in other cases, yet one that evades review in the specific instance.

*Id.* at 846.

We agree. There is a reasonable expectation that the appellants will be subjected to similar closure orders in the future. *See Globe Newspaper Company v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Commonwealth v. Buehl*, 316 Pa.Super. 215, 220, 462 A.2d 1316, 1319 (1983). We conclude that this appeal is not moot and we, therefore, proceed to the merits.

### ACCESS TO THE TRANSCRIPT OF THE *STARKS* HEARING

■ The first substantive issue with which we are faced is the existence and extent of the right of the press and public to have access to the transcripts of the pretrial *Starks* hearing. The lower court ordered closed the portions of the *Starks* hearing dealing with the contents of the tape recordings in order to assure that defendants' rights to a fair trial would not be prejudiced. In this appeal, however, we are not concerned with the propriety of the closure order. Rather, we must determine whether, after all the charges have been dismissed, the press and public have a right of access to the transcript of the closed *Starks* hearing.[5] Since all the charges have been dismissed, the defend-

5. Specifically, appellants state the issue as follows:
    Did the court below err in refusing appellants access to the transcript of a pretrial proceeding in a criminal case where:

ants' fair trial rights are no longer in jeopardy. Thus, we must decide if there are any other factors that would limit appellants' access to the transcripts of the hearing.

Appellee asserts that both Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 *et seq.* and the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S.A. §§ 5701–5726 [6] prohibit the disclosure of the contents of the tape recordings in the instant case.

Title III is a comprehensive statute designed to regulate strictly the interception and disclosure of wire and oral communications. It "has as its dual purpose (1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of [such communications] may be authorized." *S.Rep. No.* 1097, 90th Cong., 2d Sess., *reprinted in* [1968] *U.S.Code Cong. & Admin.News,* pp. 2112, 2153. The legislative history of Title III makes it clear, as do the elaborate authorization and disclosure provisions of the statute itself, that "the protection of privacy was an overriding congressional concern" of the act. *Gelbard v. United States,* 408 U.S. 41, 48, 92 S.Ct. 2357, 2361, 33 L.Ed.2d 179 (1972) (footnote omitted) (decided together with a case on certiorari to this circuit, *United States v. Egan, id.* [408 U.S. 922, 92 S.Ct. 2479, 33 L.Ed.2d 332] ).

Indeed, Title III's complex provisions regulate both interception and disclosure of communications in great detail. The statute legalizes interceptions conducted pursuant to the authorization provisions of § 2516 and § 2518. In addition, it specifically exempts from those provisions only certain limited categories of interceptions.

(a) Defendants' rights to fair trials were not at issue, all charges against them having been dismissed;

(b) Defendants' asserted privacy interests were insufficient to outweigh the constitutional right of access to judicial records; and

(c) No statutory provisions required denial of access to the transcript?

Brief for Appellants at 3.

6. Act of October 4, 1978, P.L. 831, No. 164, § 2.

One of those exempted categories comprises interceptions "where one of the parties to the communication has given prior consent to [the] interception," which the statute declares "shall not be unlawful," § 2511(2)(c). Any interceptions other than those authorized by § 2516 and § 2518 or excepted by § 2511 are declared illegal.

\*     \*     \*     \*     \*     \*

Title III affirmatively provides for the disclosure of intercepted communications only in certain carefully limited instances. Public disclosure with limited exceptions, is authorized only in accordance with § 2517(3):

> Any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof.

18 U.S.C. § 2517(3). The legislative history explains that what may be disclosed within § 2517(3) are those communications that were not "unlawfully intercepted" within the meaning of § 2518(10)(a). *S.Rep. No.* 1097, 90th Cong., 2d Sess., *reprinted in* [1968] *U.S.Code Cong. & Admin.News,* pp. 2112, 2195.

Title III thus authorizes the disclosure only of certain communications at a suppression and *Starks* hearing: those intercepted in accordance with the authorization procedures of § 2516 and § 2518, or else those intercepted under one of the exceptions to § 2516 and § 2518 contained in § 2511.

*United States v. Cianfrani,* 573 F.2d 835, 855–56 (3d Cir. 1978) (footnotes omitted).

Thus, Congress' interest in protecting the privacy of communications can, in some instances, limit the public's right of access to criminal proceedings.

Instantly, appellee Catania filed a petition for a writ of habeas corpus alleging that the tapes and transcript of the intercepted communications violated both the federal and the state wiretapping statutes. The Commonwealth then petitioned for a *Starks* hearing in order to determine the "lawfulness" of the wiretap. The court below never ruled on the Commonwealth's *Starks* motion. Rather, all of the charges against the defendants were dismissed without the court determining whether the communications were lawfully intercepted.

We believe that prior to a determination by a court that communications were lawfully intercepted, Title III requires limitations on disclosure. *See Cianfrani, supra* at 857, n. 10.[7] There can be no disclosure of intercepted communications until a court has ruled that the interception was lawful. In this case, no court has ever ruled on the lawfulness of the subject tape recorded communications. Thus, Title III prohibits disclosure of the contents of the tape recordings in the instant case.

The Pennsylvania wiretapping statute, 18 Pa.C.S.A. §§ 5701–5726, contains disclosure provisions similar to those found in Title III. The state act also limits disclosure until a determination of the lawfulness of the interception is made.[8] Thus, the state statute, like the federal statute,

---

7. Our decision is supported by the *Cianfrani* opinion:

   Title III requires such limitations even where interceptions allegedly obtained by consent are at issue. Intervenors argue that Title III does not govern the disclosure of consensually intercepted communications. They assert that the explicit exemption of consent interceptions from the authorization requirements of the act contained in § 2511(2)(c) implicitly exempts such interceptions from disclosure restrictions as well. We express no opinion on whether interceptions obtained by consent are exempt from the disclosure restrictions of the act once they have already been determined to have been intercepted by consent.... *But we do believe that prior to that determination, Title III requires limitations on disclosure in order to insure that nonconsent—and therefore illegal—interceptions are not disclosed.*

   *Cianfrani, supra* at 857, n. 10 (emphasis added).

8. *See* 18 Pa.C.S.A. § 5717(b):

   **(b) Evidence.**—Any person who, *by any means authorized by this chapter,* has obtained knowledge of the contents of any wire or oral

prohibits public access to those portions of the transcript of the *Starks* hearing in which the contents of the tape recordings are discussed.

Neither the federal nor the Pennsylvania statute, however, requires that the entire *Starks* hearing transcript remain sealed; rather, only those portions of the transcript that refer to the contents of the tape-recorded conversations are to be protected from public disclosure.[9]  Thus, the order of the lower court denying appellants access to those portions of the transcript of the *Starks* hearing dealing with the contents of the tape recordings is affirmed.[10]

communication, or evidence derived therefrom, may disclose such contents or evidence to an investigative or law enforcement officer and may disclose such contents or evidence while giving testimony under oath or affirmation in any criminal proceeding in any court of this Commonwealth or of another state or of the United States or before any state or federal grand jury or investigating grand jury. Act of October 4, 1978, P.L. 831, No. 164, § 2, 18 Pa.C.S.A. § 5717(b) (emphasis added).  The language of this provision indicates that only those intercepted communications that are authorized may be disclosed pursuant to this section.

9. Appellants aver that the lower court improperly closed the *entire* *Starks* hearing.  As we read the lower court order (see note 2), the closure was properly limited to those aspects of the *Starks* hearing dealing with the tape recordings and their contents.  The denial of access to the transcripts of the *Starks* hearing should likewise be limited to those portions of the transcripts that refer to the contents of the tape-recordings.

10. In his dissenting opinion, Judge Lipez argues that we should either remand with a direction to the lower court to determine whether the interceptions were legally made, or make that determination ourselves on the basis of the record before us.  Judge Lipez favors the latter approach.  I am of the opinion, however, that even should the lower court or this court decide that the interceptions were lawfully made, the Pennsylvania Wiretapping and Electronic Surveillance Control Act, Act of October 4, 1978, P.L. 831, No. 164, § 2, 18 Pa.C.S.A. §§ 5701–5726, precludes disclosure of the contents of the tapes.

As previously stated, both the federal and Pennsylvania statutes prohibit disclosure until a determination has been made that the communications were lawfully intercepted.  Even after that determination has been made, disclosure is permitted only under limited circumstances.

The applicable federal provision states:

Any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication, or evidence derived therefrom intercepted in accordance with the

provisions of this chapter may disclose the contents of that commu-
nication or such derivative evidence while giving testimony under
oath or affirmation in any proceeding held under the authority of
the United States or of any State or political subdivision thereof.
18 U.S.C. § 2517(3) (emphasis added).

The applicable section of the Pennsylvania statute provides:

(b) Evidence.—Any person who, by any means authorized by this
chapter, has obtained knowledge of the contents of any wire or oral
communication, or evidence derived therefrom, may disclose such
contents or evidence to an investigative or law enforcement officer
and may disclose such contents or evidence while giving testimony
under oath or affirmation in any criminal proceeding in any court
of this Commonwealth or of another state or of the United States or
before any state or federal grand jury or investigating grand jury.
18 Pa.C.S.A. § 5717(b) (emphasis added).

The underlined portions indicate the major difference between the
two statutes. The federal statute permits disclosure "in any proceed-
ing", while the Pennsylvania statute limits disclosure to testimony
given "in any criminal proceeding." Thus, the state statute is more
narrowly drawn.

In its original version, the federal statute authorized disclosure only
at "criminal proceedings." Thus, the original version was almost
identical to the present state statute. Under the more restrictive
original version of the federal statute, the district court in *United
States v. Cianfrani*, 573 F.2d 835 (3d Cir.1978), interpreted the statute
to mean that public disclosure was authorized only at a full trial, in
order to afford maximum protection to the privacy interests involved.
*Id.* at 859 n. 13. Thus, the district court in *Cianfrani* refused to grant
access to the transcript of a *Starks* hearing because it was not "a full
trial." The circuit court in that case reversed the district court
because the statute had been amended to read "in *any* proceeding",
thus broadening the circumstances under which legally intercepted
communications could be divulged in court. *Id.*

The situation in the instant case is similar to that in *Cianfrani.*
Thus, under the amended version of the federal statute, and pursuant
to the analysis in *Cianfrani*, it would seem that, if the interceptions
were lawfully made, we should grant access to the transcript of the
*Starks* hearing since the testimony was given under oath in a court
proceeding. We need not decide, however, whether the federal stat-
ute would permit disclosure in this case, since we hold that the
Pennsylvania statute prohibits such disclosure.

Whereas the wording of the federal statute was changed in 1970, the
state statute still contains the more restrictive "in any criminal pro-
ceeding" language. The district court in *Cianfrani* held that the *Starks*
hearing was not included under the language "in any criminal pro-
ceeding" and that disclosure was limited to testimony given in a full
trial. We agree. The purpose of the *Starks* hearing was to determine
the authenticity, audibility, integrity, identification, and legality of the
tape recordings of the intercepted communications. There was no
adversarial process as to the contents of the tapes with regard to the
actual crimes charged. The restrictive state statute authorizes disclo-
sure only at a full trial. Even if the lower court were to determine
that the interceptions were lawfully made, the Pennsylvania statute

## BILL OF PARTICULARS

Subsequent to the filing of this appeal, appellant Central States Publishing, Inc. was denied access by the court administrator of the Court of Common Pleas of Delaware County to the Commonwealth's Bill of Particulars which was filed in July 1982 in response to appellee Catania's request therefor. The Bill of Particulars contained exhibits that quoted extensively from the tape recordings. The newspapers filed in this court a petition for access to the Bill of Particulars. Appellee Catania filed a response to that petition. On June 30, 1983, this court entered a per curiam order [11] continuing the sealing of the *Starks* transcript, including the Commonwealth's Bill of Particulars, during the pendency of this appeal.

In this appeal, appellants argue that they are entitled to access to the Bill of Particulars.[12] However, I am of the

would prohibit disclosure. Thus, a remand would be neither useful nor appropriate.

11. The order entered by this court reads as follows:

ORDER

AND NOW, this 30th day of June, 1983, upon consideration of the petition seeking access to the District Attorney's response to the Bill of Particulars filed below in this matter, and upon consideration of the responses, memoranda and argument of parties, it is ordered that, for the purpose of preserving the status quo of the parties during the pendency of this appeal: (1) the oral order of The Honorable Edmund B. Spaeth, Jr. of June 2, 1983, continue in effect; and (2) the materials sought by petitioners remain sealed and be made part of the sealed record in this appeal.

12. Specifically, appellants state the issue as follows:

Are appellants entitled to access to the Bills of Particulars filed by the Commonwealth in this case where said Bills are a part of the record of this case and are not subject to the sealing order of the court below?

Brief for Appellants at 4.

Appellee Catania argues that we should not reach this issue because access to the Bill of Particulars was not the subject of the order of Judge Cherry from which this appeal was taken. This appeal was taken from Judge Cherry's order of January 4, 1983 refusing access to the transcript. Appellee Catania argues that the Bill of Particulars was sealed under Judge Cherry's earlier order of October 13, 1982 which closed the *Starks* hearing to the public and sealed the record of that hearing. Therefore, appellee argues, since appellants did not

opinion that we cannot grant appellants access to the Bill of Particulars for the same reasons that we could not grant them access to the complete transcript of the *Starks* hearing. Both Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 *et seq.* and the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S.A. §§ 5701–5726 prohibit the disclosure of the contents of the tape recordings. By permitting appellants to have access to the Bill of Particulars we would, in effect, be handing a copy of the transcript of the tape recordings to them. We have held that, since no court has ruled on the lawfulness of the interceptions, we cannot disclose the contents of those recordings. If we were to require the lower court to divulge the contents of the Bill of Particulars

appeal from the order of October 13, they cannot now ask for a review of the Bill of Particulars issue in this appeal.

It must be pointed out, however, that Judge Cherry's order sealing certain parts of the record was vague; it was not clear whether Judge Cherry intended to seal the Bill of Particulars. It is true that Judge Cherry's opinion in support of the October 13 order seems to indicate that he intended to seal all portions of the record having to do with the contents of the tape recordings; this would include the Bill of Particulars. Nevertheless, I feel that whether the Bill of Particulars was part of the sealed record was unclear. Therefore, I would not hold that appellants waived this issue by failing to appeal from the order of October 13.

Alternatively, appellee Catania argues that we cannot address this issue because the lower court was never given the opportunity to rule on the matter. That is, if the Bill of Particulars was not sealed by the October 13 order, then the appellants should have sought redress in the Court of Common Pleas of Delaware County when the court administrator refused them access to the Bill of Particulars. They did not do so. Therefore, appellee argues, since appellant did not raise the issue before the lower court, this court lacks jurisdiction over this aspect of the appeal.

I note that the appellants' attempt to secure access to the Bill of Particulars was made subsequent to the filing of the instant appeal. Thus, appellants may have thought that the lower court no longer had jurisdiction to rule on the matter.

I admit that it is not clear whether appellants' Bill of Particulars issue is properly before us. Nevertheless, a mere reiteration of appellee's alternative arguments indicates the confusion as to what course the appellants should have taken in order to properly perfect their appeal of the Bill of Particulars issue. Given this procedural confusion and the ambiguity of Judge Cherry's sealing order, I feel we should give appellants the benefit of the doubt and address the issue.

to appellants, we would eviscerate the purpose of our own ruling.

Of course, the limitation on appellants' access to the record in this case must be as narrow as possible. Thus, only those portions of the Bill of Particulars and its accompanying exhibits that deal with the contents of the electronically intercepted communications must be sealed. The federal and state wiretapping statutes require that the contents of such tape recordings not be disclosed until a determination is made that the communications were lawfully intercepted. Thus, I would hold that all portions of the record of this case dealing with or referring to the contents of the electronic surveillance must be sealed. Appellants and other members of the press and public must be granted access to all other parts of the record.

Order affirmed.

WIEAND, J., filed a concurring opinion.

LIPEZ, J., filed a dissenting opinion.

WIEAND, Judge, concurring:

I agree with Judge Wickersham that the trial court's order of January 4, 1983 must be affirmed insofar as it denies public and media access to interceptions of private telephone conversations. The right of the public to examine the Commonwealth's Bill of Particulars, which is now a part of the trial court's records, however, is not properly before this Court. Therefore, I find it unnecessary to decide the merits of that issue.

Criminal proceedings against Nicholas Catania and others were terminated prior to trial. A closed hearing pursuant to *United States v. Starks*, 515 F.2d 112 (3d Cir.1975), had previously been conducted by the court to determine authenticity, audibility, integrity and identification of tapes of intercepted telephone conversations.[1] The issues presented at that hearing had not been finally determined when the

1. The propriety of the order closing the pre-trial *Starks* hearing is not before us and is not properly subject to review in the present appeal.

criminal proceedings were terminated. Philadelphia Newspapers, Inc., Westinghouse Broadcasting and Cable, Inc. and Central States Publishing, Inc. (the media) then petitioned the trial court for access to the transcripts of the *Starks* hearing. The media's petition was denied. An appeal followed.

The media's argument that there is a First Amendment guarantee of media access to judicial records and documents, although accepted by the dissent, is erroneous. The First Amendment guarantees freedom of the press; it does not grant to the news media a right of access to judicial records which is greater than the right of access enjoyed by the general public. " 'Once beyond the confines of the courthouse, a news-gathering agency may publicize, within wide limits, what its representatives have heard and seen in the courtroom. But the line is drawn at the courthouse door; and within, a reporter's constitutional rights are no greater than those of any other member of the public.' " *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 609, 98 S.Ct. 1306, 1318, 55 L.Ed.2d 570, 587 (1978), quoting *Estes v. Texas*, 381 U.S. 532, 589, 85 S.Ct. 1628, 1663, 14 L.Ed.2d 543, 584 (1965) (Harlan, J., concurring). See also: *United States v. Criden*, 648 F.2d 814, 817 (3d Cir.1981).

The right upon which the media's request must rise or fall in the instant case is a common law right, widely recognized by the courts, to inspect and copy public records and documents, including judicial records and documents. *Nixon v. Warner Communications, Inc.*, *supra* at 597, 98 S.Ct. at 1312, 55 L.Ed.2d at 579; *United States v. Criden*, *supra; In re National Broadcasting Co. (Myers)*, 635 F.2d 945, 949 (2d Cir.1980); *United States v. Hubbard*, 650 F.2d 293, 314 (D.C.Cir.1980). This right, it is now agreed, extends to records which are not in written form, such as audio and video tapes. *In re National Broadcasting Co. (Jenrette)*, 653 F.2d 609, 612 (D.C.Cir.1981). It is clear, however, that this right is not absolute. *Id.* at 613. "Every court has supervisory power over its own records and files,

and access has been denied where court files might have become a vehicle for improper purposes." *Nixon v. Warner Communications, Inc., supra* at 598, 98 S.Ct. at 1312, 55 L.Ed.2d at 580. "The public has ... been excluded, temporarily or permanently, from court proceedings or the records of court proceedings to protect private as well as public interests: to protect trade secrets, or the privacy and reputations of victims of crimes, as well as to guard against risks to national security interests, and to minimize the danger of an unfair trial by adverse publicity." *In re National Broadcasting Co., supra*, 653 F.2d at 613.

These are not necessarily the only situations in which public access to judicial records can properly be denied. A bright line test has yet to be formulated. Meanwhile, the decision as to public access must rest in the sound discretion of the trial court.

This discretion, however, is not open-ended. Rather, access may be denied only if the [trial] court, after considering "the relevant facts and circumstances of the particular case," and after "weighing the interests advanced by the parties in light of the public interest and the duty of the courts," concludes that "justice so requires." The court's discretion must "clearly be informed by this country's strong tradition of access to judicial proceedings." In balancing the competing interests, the court must also give appropriate weight and consideration to the "presumption—however gauged—in favor of public access to judicial records." Any denial or infringement of this "precious" and "fundamental" common law right remains subject to appellate review for abuse.

*Id.* at 613 (footnotes omitted). See also: *United States v. Criden, supra.*

In the instant case, the trial court did not abuse its discretion by denying public access to the substance of intercepted telephone conversations. The privacy rights of the individuals whose conversations were intercepted and the absence of compelling reason for the disclosure of private conversations unnecessary to or for any criminal

proceeding weigh heavily in favor of the court's denial of access.

Interceptions of private telephone conversations are illegal. See: 18 Pa.C.S. §§ 5703, 5725. Although interceptions by law enforcement authorities have been authorized by federal and state statutes, an overriding concern for the individual's right of privacy has prompted strict controls, including the sealing of evidence thus obtained. See: Title III of the federal Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 et seq. and the Pennsylvania Wiretapping and Electronic Surveillance Control Act of October 4, 1978, 18 Pa.C.S. §§ 5701 et seq. Authorized disclosures of intercepted telephone communications are extremely limited. Under the Pennsylvania Act, disclosure is authorized for law enforcement purposes and in criminal proceedings. 18 Pa.C.S. § 5717. Unauthorized disclosure or use of intercepted telephone conversations is punishable criminally as a felony, 18 Pa.C.S. § 5703(2) and (3), and civilly by compensatory and punitive damages, as well as the payment of counsel fees and costs. 18 Pa.C.S. § 5725(a). These provisions suggest emphatically the high priority which the legislature has placed upon the individual's right of confidentiality in connection with the use of his or her telephone.

The trial court weighed this right of privacy against the public's right of access to judicial records in the instant case and found that the right of privacy should prevail. Where, as here, the substance of intercepted telephone conversations was not necessary to and was not to be revealed publicly in criminal proceedings, the court held, the public's right of access had to yield to the individual's right of privacy. I find no abuse of discretion in the court's decision. The representatives of law enforcement have no need to make public disclosure of the intercepted conversations—all criminal proceedings have been terminated—and both the federal and state statutes suggest that private telephone conversations are privileged and should not be made

public. See: 18 Pa.C.S. § 5711. See also: *In re Kansas City Star*, 666 F.2d 1168 (8th Cir.1981).

The record in this case fails to disclose any factual showing of good cause for disclosure. Although public officials necessarily surrender a great deal of their privacy by virtue of office, their private telephone conversations continue to be cloaked with confidentiality except as otherwise provided by statute. The media have failed to show good cause for making public the telephone conversations intercepted in this case; it is not enough that one of the conversants was a public official. Therefore, I agree with Judge Wickersham that the trial court's order should be affirmed insofar as it seals the tapes of the intercepted telephone conversations and that portion of the transcript of the closed *Starks* hearing which refers to the substance of those intercepted conversations.

The procedure with respect to the sealing of the Commonwealth's Bill of Particulars, as Judge Wickersham and Judge Lipez have observed, is irregular. The Court Administrator in Delaware County, acting according to his perceived interpretation of the trial court's prior orders, attempted to prevent media examination of a document which was then a part of the court's records. Apparently the media similarly interpreted the trial court's prior orders as compelling nondisclosure, for they have filed immediately in this Court a petition for an order granting access to the Bill of Particulars.

The procedure followed by all parties, in my judgment, was defective. It was the trial court which in the first instance had supervisory powers over its own records. The right of access to those records, as previously observed in this opinion, is not absolute but depends on the exercise of a sound discretion. This discretion must be exercised by the judges of the trial court and not by the court administrator. The latter officer has neither power nor authority to make discretionary decisions required to be made by the court. See and compare: *Gonzales v. Procaccio Brothers Trucking Co.*, 268 Pa.Super. 245, 251, 407 A.2d 1338, 1341 (1979).

When the court administrator nevertheless took it upon himself to seal a portion of the court's records, a request for access should have been directed in the first instance to the judges of the trial court.

I disagree with Judge Lipez that this Court, an intermediate appellate court, should assume original jurisdiction to direct the trial court either to seal or unseal its records. Admittedly, the petition in the instant case is shrouded by the shadow of the separate appeal pending in this Court from the trial court's order sealing the transcript of the *Starks* hearing. In the usual situation, however, the necessity for a prior petition to the trial court for access to its own records will be clear. Only by such a petition can the trial court exercise the discretion which has been vested in it. Only in this manner can a record be prepared which will enable an intermediate appellate court to review the exercise of the discretion which has been vested in the trial court.

The Supreme Court has original jurisdiction to issue writs of prohibition and mandamus to courts of inferior jurisdiction. 42 Pa.C.S. § 721(2). The Superior Court, however, can issue such writs only to the extent that an action in prohibition or mandamus is ancillary to proceedings within the Superior Court's appellate jurisdiction. *Pennsylvania Labor Relations Board v. Butz*, 411 Pa. 360, 364, 192 A.2d 707, 710 (1963); 42 Pa.C.S. § 741. The Superior Court's issuance of writs of prohibition and mandamus, therefore, are proper only when subordinate to or auxiliary to a pending appeal. This Court has no original jurisdiction to order a court of inferior jurisdiction to allow public examination of the court's records where that court has never acted on a request therefor.

Because the trial court has not acted to grant or deny access to the Commonwealth's Bill of Particulars, which is a part of the trial court's records, and because this Court lacks original jurisdiction to order public access to the records of the trial court, I would deny the petition which the media has filed in this Court. The attempt by the Court

Administrator in Delaware County to seal the records of the trial court is neither appealable to nor presently before this Court. A request to open the Bill of Particulars to public inspection should, in the first instance, be made to the trial court. Only after that court has exercised its discretion by granting or denying the petition will the matter be ripe for appellate review.

LIPEZ, Judge, dissenting:

The law clearly requires the immediate unsealing of both the bill of particulars and the *Starks* hearing transcript in this case. Part I of this dissent deals with the bill of particulars; part II, with the *Starks* hearing transcript.

## I.

Concerning the bill of particulars, defendant-appellee Catania contends: (A) this court has no jurisdiction to decide whether the bill of particulars should be unsealed; and (B) if we have jurisdiction, the media's contention that the bill of particulars should be unsealed is without merit.

## A.

Catania raises two arguments that we lack jurisdiction over the bill of particulars: (1) Judge Cherry (sitting as trial judge by special assignment) ordered the bill of particulars sealed on October 12, 1982, and the media failed to appeal that order; and (2) Judge Cherry never ordered the bill of particulars sealed, and therefore the media could not have appealed the question to this court, since there was no order from which to take an appeal.

### 1.

Catania's claim that Judge Cherry ordered the bill of particulars sealed on October 12 is refuted by Catania's own brief, which quotes the following as the "relevant part" of the October 12 order:

> [I]t is found that prejudice to the defendants from the media coverage disseminated to protect all jurors in this case is substantial, and very well could result in the

inability of the defendant or any of them to be tried before a fair and impartial jury.

It is further found the purpose of the Stark [sic] hearing is merely to determine questions separate and apart from the relevance, materiality and admissability of any of the lengthy intercepted recordings at trial on merits, and in the event that the same shall result in these proceedings.

It is therefore ordered that those aspects of the Stark [sic] hearing dealing with the playing of tape recordings, provision of transcripts allegedly made therefrom and any testimony relating to the context of those recordings shall be and are hereby closed to the public until further order of the Court.

Any records of such proceedings which deal with the contents of the tapes and transcripts allegedly made therefrom as well as any testimony representing the contents of the tapes shall be and hereby will be sealed.

While Catania's brief is by no means clear on the point, its argument seems to be that the phrase "such proceedings" in the last sentence includes the bill of particulars as well as the *Starks* hearing transcript. This is incorrect, since immediately preceding the phrase "such proceedings" Judge Cherry refers twice to the *Starks* hearing and nothing else. The portion of Judge Cherry's order not quoted by Catania's brief also contains no reference to the bill of particulars, but only to the media's motion to open the *Starks* hearing and Catania's motion to close it. Indeed, the entire 52 pages of transcript preceding Judge Cherry's October 12 order contain not a single reference to the bill of particulars by anyone.

In addition to the October 12 order, which was stated orally on the record, Judge Cherry filed a written order covering the same subject with slightly different wording on October 13, 1982. This order also contains no reference to the bill of particulars. Judge Wickersham's opinion states in footnote 12 that the October 13 order was "vague," and that "it was not clear whether Judge Cherry

intended to seal the Bill of Particulars." To the contrary, Judge Wickersham's own footnote 2 (which quotes the October 13 order in full) clearly shows that the order was anything but vague concerning whether it was intended to include the bill of particulars.

The October 13 order twice refers specifically to "the *Starks* hearing" and once to "proceedings undertaken in connection with the Commonwealth's Motion for Hearing in Limine." Besides the *Starks* hearing, the most this latter phrase could include would be defense counsel's argument for suppression of the tapes immediately preceding the *Starks* hearing.

Judge Wickersham's opinion is apparently attempting to construe the phrase "record of those proceedings" in clause (2) of the last sentence of the October 13 order as including the bill of particulars. Read in context, "those proceedings" clearly refers to the "*Starks* hearing," which is twice mentioned specifically just before "those proceedings." Besides the *Starks* hearing, "those proceedings" could at most refer to the suppression argument immediately preceding the *Starks* hearing.

Even if "record of those proceedings" in the October 13 order and "such proceedings" in the October 12 order are read out of context, the construction urged by Judge Wickersham and Catania is unreasonable, since a bill of particulars hardly constitutes a "proceeding." Thus the record, as well as Catania's own brief, conclusively refutes Catania's claim that Judge Cherry sealed the bill of particulars.[1] This brings us to Catania's alternative claim, that Judge Cherry did not seal the bill of particulars.

1. Catania's claim that the media failed to appeal the order is also refuted by the record, which shows that the media filed an appeal to this court on October 13, 1982. This resulted in Judge Cavanaugh's order of October 14, 1982, remanding the case so that the media could petition for access to the *Starks* hearing transcript. Since both of the factual allegations which serve as the basis for Catania's first jurisdictional argument are false, there is no need to decide whether he would be entitled to any relief if either or both of them were true.

## 2.

As just demonstrated, Catania's contention that Judge Cherry did not order the bill of particulars sealed is true. It follows that Catania is also correct in saying that the media had no way of appealing the issue to this court. It does not follow, however, that we have no jurisdiction to decide whether the bill of particulars should be unsealed. Our jurisdiction to decide this issue is not based on a nonexistent appeal from a nonexistent order (as Judge Wickersham's opinion seems to imply in footnote 12). . Rather, what we are (or should be) deciding is whether to grant or deny the media's "PETITION TO REVOKE AN ORDER IMPOUNDING CERTAIN RECORDS/PETITION TO OPEN CERTAIN RECORDS," which was filed in this court on June 3, 1983. Catania filed a response to this petition on June 7, 1983. Judge Cavanaugh, sitting as motions judge for this court, heard argument and entered the following order:

AND NOW, this 30th day of June, 1983, upon consideration of the petition seeking access to the District Attorney's response to the Bill of Particulars filed below in this matter, and upon consideration of the responses, memoranda and argument of the parties, it is ordered that, for the purpose of preserving the status quo of the parties during the pendency of this appeal: (1) the oral order of The Honorable Edmund B. Spaeth, Jr. of June 2, 1983, continue in effect; and (2) the materials sought by petitioners remain sealed and be made part of the sealed record in this appeal.

The effect of this order was simply to leave the bill of particulars sealed until the issue could be briefed, argued, and decided by this panel in conjunction with the media's appeal from Judge Cherry's order denying them access to the *Starks* hearing transcript.

## B.

In deciding whether to grant the media's petition to unseal the bill of particulars, we come at last to the question which Catania's convoluted jurisdictional argument

begs: if Judge Cherry did not seal the bill of particulars, who did? The media and Catania agree that the bill of particulars was sealed by the Delaware County Office of Judicial Support[2] on advice of an assistant county solicitor. The media and Catania disagree on whether the Office of Judicial Support was required to do this by an order of Judge Cherry. The media claim Judge Cherry never ordered the bill of particulars sealed (i.e., Catania's second jurisdictional argument), while Catania reverts to the position of his first jurisdictional argument, that Judge Cherry did order the bill of particulars sealed. As demonstrated in part I.A.1. above, the record establishes that Judge Cherry never ordered the bill of particulars sealed, and that neither Catania nor anyone else ever requested that he do so. The Office of Judicial Support therefore had no authority to seal the bill of particulars. Its action was a legal nullity, and the media's petition should be granted.

Catania argues further, however, that the media's proper remedy was not to file a petition in this court, but rather to obtain relief from the court below. Judge Wieand's concurring opinion raises essentially the same argument under the rubric of "jurisdiction", contending that this court lacks the power to decide the media's petition under 42 Pa.C.S. § 721(2). I do not believe it is necessary to decide whether section 721(2) might provide an alternative basis for jurisdiction, because it is clear that this court has inherent power to direct its own prothonotary to perform a ministerial act, *viz.*, to provide records on file in the prothonotary's office to members of the public who have made a proper request, if those records are legally required to be accessible to the public.

The concurring opinion suggests that "a request for access should have been directed in the first instance to the judges of the trial court." The papers and exhibits filed in this court in connection with the media's petition indicate

---

2. The Delaware County Office of Judicial Support performs the same functions as the prothonotary and clerk of the courts. *See* 42 Pa.C.S. §§ 2731–2737, 2751–2757.

that the media filed a mandamus action requesting the court below to order the Director of the Office of Judicial Support to release the bill of particulars. The confusing mass of papers and exhibits also seems to indicate that the Director, represented by the same assistant solicitor who had decided that the bill of particulars should be sealed, defended against the mandamus action on the ground that the Office of Judicial Support no longer had possession of the record, because upon making his decision to seal the bill of particulars, the assistant solicitor had hand-delivered the entire record (including the now "sealed" bill of particulars) to the Superior Court's prothonotary's office. I do not find it necessary to determine precisely what occurred in the lower court, because even if the media filed nothing in the lower court, it would not change the result.

I agree with Judge Wieand that the issue was one for the trial court in the first instance. If Catania wanted the bill of particulars sealed, he should have requested the lower court to do so. Catania made no such request; accordingly, the bill of particulars was not sealed, and there is nothing to overcome the presumption of openness of judicial records. *See Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597–98, 98 S.Ct. 1306, 1311–12, 55 L.Ed.2d 570 (1978). The media, like all members of the public, were entitled to rely on the presumption of openness with respect to records which were not filed under seal, not required by rule or statute to be filed under seal, and never even requested to be filed under seal.

Determining whether to grant the media's petition would not usurp the lower court's function, but enforce it. All we need do is determine whether the media are correct in their contention that the lower court never ordered the bill of particulars sealed. Since the court did not seal the bill of particulars, the bill has never been legally sealed, and we should order our prothonotary to act accordingly by providing public access to the bill while the record is on file in this court. The concurring opinion's approach does not constitute proper deference to the function of the lower court, but

permits the lower court's jurisdiction to be usurped by lawyers and clerks, who not only can decide to deprive the public of knowledge to which it is legally entitled, but also can place that decision beyond the power of any court to enforce the law.

The fact that the lower court never ordered the bill of particulars sealed is sufficient in itself to require that the media's petition be granted, and the argument on the merits which Catania has raised for the first time in this court should not even be considered. Moreover, even if we could consider the argument, it has no discernible merit. Catania concedes that there is a presumption of a right of access to, and copying of, judicial records. He adds that these presumptive rights are subject to exceptions under certain circumstances, but does not even allege any such circumstances exist here.

Catania's brief asserts that a bill of particulars is not a judicial record. Since a bill of particulars is a pleading in a court case by a party (the Commonwealth) to the case, the contention that it is not a judicial record would seem to be a self-evident absurdity, unless it can be supported by reference to a statute or controlling case law. Catania's brief states that *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) is "instructive" on this point. Catania's brief, however, fails to point out where the *Nixon* case provides this instruction. A close reading of the majority opinion in *Nixon*, as well as the dissenting opinions, does not reveal anything of even marginal relevance to the issue of whether a bill of particulars constitutes a judicial record.

Judge Wickersham's opinion states that we cannot grant access to any portion of the bill of particulars based on the tapes for the same reason that we cannot grant access to any portions of the *Starks* hearing transcript based on the tapes. I disagree with his conclusion on the *Starks* hearing transcript for the reasons stated in part II, *infra*, but even if I agreed that the *Starks* hearing transcript should remain sealed, I would still disagree concerning the bill of particu-

lars, which is on an entirely different footing from the hearing transcript.

A bill of particulars is simply a supplement to the indictment or information. Its function is "to clarify the pleadings and to limit the evidence which can be offered to support the indictment or information." Note, Pa.R.Crim.P. 304. The bill of particulars is not itself evidence, nor is its purpose to reveal the evidence which the Commonwealth intends to use at trial. *See Commonwealth v. Dreibelbis*, 493 Pa. 466, 472–73, 426 A.2d 1111, 1114 (1981); *Commonwealth v. Orlowski*, 332 Pa.Super.Ct. 600, 636, 481 A.2d 952, 970 (1984). The remedy for a criminal defendant who is being prosecuted on the basis of illegally intercepted communications is a motion to suppress use of the intercepted communications as evidence. *See* 18 U.S.C. § 2515; 18 Pa.C.S. § 5721.

No provision of either the federal or state wiretap statute provides for the sealing of any portion of a pleading, such as an indictment, information, criminal complaint or bill of particulars. Catania seems to have recognized this, since he has never contended, either in this court or the court below, that the criminal complaint should be sealed, even though one of his petitions filed in the court below claimed that the complaint was also based on the tapes. Indeed, as has previously been shown in this opinion, Catania never contended in the lower court that the bill of particulars should be sealed, and the argument which he raises for the first time in this court does not include the theory used by Judge Wickersham. Thus, in addition to being erroneous on the merits, Judge Wickersham's theory is being applied sua sponte, which our Supreme Court has held we are not permitted to do. *Commonwealth v. Simmons*, 504 Pa. 565, 570, 475 A.2d 1310, 1313 (1984); *Wiegand v. Wiegand*, 461 Pa. 482, 337 A.2d 256 (1975); *see generally Commonwealth v. Murphy*, 305 Pa.Super.Ct. 246, 250–51, 451 A.2d 514, 516–17 (1982), *petition for allowance of appeal denied* (1983) (opinion announcing the judgment of the court; collecting cases).

In sum, the bill of particulars and the *Starks* hearing transcript present distinct questions. The bill of particulars should be unsealed regardless of the outcome with respect to the transcript, which should also be unsealed for the independent reasons now to be discussed in part II.

## II.

While Judges Wickersham and Wieand agree that the *Starks* hearing transcript should remain sealed, their reasoning diverges widely. Judge Wickersham's theory that a *Starks* hearing is not a "criminal proceeding" will be discussed in part A below; Judge Wieand's "right of privacy" rationale will be discussed in part B. In addition, both opinions seem to rely on the fact that Judge Cherry never ruled on the lawfulness of the interceptions, although it is not clear in either opinion whether this is supposed to constitute an independent ground for affirmance, or merely supports affirmance in conjunction with the other theory. The effect of Judge Cherry's failure to rule on the lawfulness of the interceptions will be discussed in part C.

## A.

Judge Wickersham's opinion concedes in footnote 10 that "under the amended version of the federal statute, and pursuant to the analysis in [*United States v.*] *Cianfrani*, [573 F.2d 835 (3d Cir.1978)] it would seem that, if the interceptions were lawfully made, we should grant access to the transcript of the *Starks* hearing . . . ." As discussed in part C, *infra*, I believe that we can determine here that the interceptions were lawfully made. If we should not be making this determination on appeal, at the very least the case should be remanded so that the court below can determine the legality of the interceptions. Judge Wickersham, however, states "that even should the lower court or this court decide that the interceptions were lawfully made, the Pennsylvania Wiretapping and Electronic Surveillance Control Act, Act of October 4, 1978, P.L. 831, No. 164 § 2, 18 Pa.C.S.A. §§ 5701–5726, precludes disclosure of the con-

tents of the tapes." This conclusion is based on Judge Wickersham's interpretation of 18 Pa.C.S. § 5717(b), which authorizes disclosure only at a "criminal proceeding."

Judge Wickersham contends that "criminal proceeding" means only a full trial, and hence cannot include a *Starks* hearing. This determination is based on two premises which his opinion states in footnote 10: (1) "The district court in *Cianfrani* held that a *Starks* hearing was not included under the language 'in any criminal proceeding,'" and (2) the court of appeals "reversed the district court because the statute had been amended to read 'in *any* proceeding.'" These two propositions are gleaned from a confusing footnote in the court of appeals opinion in *United States v. Cianfrani, supra,* 573 F.2d at 859, n. 13.

Because this footnote is at the root of Judge Wickersham's theory, it must be carefully examined in the context of the paragraph it accompanies in the text, which states:

The court below not only closed the hearing, it also sealed the resultant record until such time as the communications at issue were introduced into evidence at the full trial. The court did so in order to protect against what it feared might be the needless disclosure of private communications. Since the government might not have used the evidence at trial, or since the evidence might not have been admissible even if offered, the court believed that disclosure even after the determination that the recordings had been obtained by consent could result in the needless publication of "privileged" communications.

*Id.* at 859. The footnote to this paragraph states:

In so ruling, the district court relied on the language of the original version of § 2517(3) to bolster its position. As originally passed, § 2517(3) authorized disclosure only at "criminal proceedings." The district court read that language restrictively to mean that public disclosure was authorized only at the full trial, in order to afford maximum protection to the privacy interests involved. In 1970, however, § 2517(3) was amended to authorize disclosure at simply "any proceeding" in federal court, thus

broadening the circumstances under which legally intercepted communications could be divulged in court. Pub.L. 91–452, Title IX, § 902(b), Oct. 15, 1970, 84 Stat. 947.

*Id.*, n. 13.

From the court of appeals' reference to the district court's use of the repealed "criminal proceeding" language to "bolster its position," Judge Wickersham has inferred that the district court's holding was that a *Starks* hearing was not a "criminal proceeding." We do not know how the repealed "criminal proceeding" language was used to "bolster" the district court's position, since this portion of the district court's opinion seems to have been deleted from the published version, which is "the consolidation of an edited version of a bench opinion, originally delivered on November 16, 1977, and a Memorandum Sur Motion for Reconsideration, originally filed November 21, 1977." *United States v. Cianfrani*, 448 F.Supp. 1102, 1103, n. 1 (1978). In any event, it seems self-evident that a holding must involve a question before the court, and the court could not have before it a question of how to apply statutory language which, by virtue of its repeal, is inapplicable. Furthermore, the portion of the district court's opinion discussing the issue plainly shows that the holding was that a *Starks* hearing fell outside the "proceeding" language applicable at the time of the *Cianfrani* case in 1977, rather than the "criminal proceeding" language repealed in 1970, as Judge Wickersham contends. *Id.* at 1114–18.

Thus any observation concerning how the "criminal proceeding" language should operate would be dictum, and only has the persuasiveness of its reasoning. This is important in analyzing the remainder of footnote 13 in the court of appeals' *Cianfrani* opinion, because it can be read to imply what Judge Wickersham claims it does—that if the "criminal proceeding" language had applied, it would have limited disclosure to a full trial. Assuming that is what the court of appeals meant to say, however, this dictum is not persuasive, because it is in conflict with the court of ap-

peals' own holding in *Cianfrani*, as well as the "plain meaning rule," which is fundamental in statutory construction. *See* 1 Pa.C.S. § 1921(b).

The holding of the court of appeals in *Cianfrani* was that a *Starks* hearing (which by definition is not part of the trial) is a "proceeding" within the meaning of the current version of 18 U.S.C. § 2517(3). Since the word "proceeding" includes a *Starks* hearing, and the phrase "criminal proceeding" includes the word "proceeding," it necessarily follows that the phrase "criminal proceeding" includes a *Starks* hearing. The function of the word "criminal" is obvious— to limit the applicability of the statute to proceedings in criminal cases. Judge Wickersham's interpretation of the word "criminal" to mean "trial" violates section 1921(b) of the Statutory Construction Act of 1972, which provides: "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b).

Judge Wickersham's position also turns the entire area of wiretap prosecutions in Pennsylvania into a contradiction in terms. If, as he contends, a *Starks* hearing is not a "criminal proceeding" under 18 Pa.C.S. § 5717(b), then there is no authorization to reveal the contents of the tapes at a *Starks* hearing, despite the fact that the sole purpose of the *Starks* hearing is to review the tapes which (under Judge Wickersham's reasoning) cannot be introduced. Since the Commonwealth would never be able to meet its burden at a *Starks* hearing, the evidence would always be inadmissible. The inevitable result of this reasoning would be that the legislature has created an extremely complex and enormously expensive system of gathering evidence, in order that it may be put to no use at all.

Yet another baffling aspect of Judge Wickersham's opinion is that it never addresses the media's principal contention—that the First Amendment requires access to the transcript of the *Starks* hearing. Even if his construction of the Pennsylvania statute were correct, it would seem that he should discuss why the statute, as construed in his

opinion, does not conflict impermissibly with the First Amendment rights involved in the main issue in this appeal.

### B.

Judge Wieand is unquestionably correct in stating that the media have no greater right of access under the First Amendment than the general public, but his conclusion that the media can make no claim under the First Amendment is a non sequitur, since it is their right of access as members of the general public that the media are claiming. There is no need to labor this point, however, because the media claim a right of access under both the First Amendment and common law. Judge Wieand at least concedes the existence of the common law right, and the result should be the same whether the media's request for the *Starks* hearing transcript is analyzed under the First Amendment or common law.

The right of access, as Judge Wieand correctly notes, is not absolute. Judge Wieand states that he would affirm Judge Cherry's holding that in this case "the public's right of access had to yield to the individual's right of privacy." The principal difficulty with this position is that Catania has not even alleged any protected right of privacy which could be weighed against the right of access.

Judge Wieand relies on the statement in *In re National Broadcasting Company, Inc.*, 653 F.2d 609, 613 (D.C.Cir. 1981) that exclusion of the public has been justified "to protect trade secrets, or the privacy and reputations of victims of crimes, as well as to guard against risks to national security interests, and to minimize the danger of an unfair trial by adverse publicity." This statement provides no support for Judge Wieand's position, since none of the listed interests are involved here. Judge Wieand states that these are not necessarily the only situations in which access should be denied, but he fails to mention anything in Catania's situation which would justify creating a new right for him. Indeed the very opinion on which Judge Wieand relies, *In re National Broadcasting Company, Inc., su-*

*pra,* seems to refute his position, since the court in that case ordered release of the tapes sought by the media, noting that the defendant had "made no claim that releasing the tapes will cause him the type of embarrassment which we have recognized might be worthy of protection, such as that flowing from 'republication of highly personal matters', for example, 'recordings of bedroom or other intimate conversations.' " *Id.* at 619, n. 55, *quoting United States v. Mitchell,* 551 F.2d 1252, 1263 (D.C.Cir.1976), *rev'd on other grounds sub nom. Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). Catania likewise has failed even to allege any facts which might provide a basis for finding some cognizable privacy interest here.

Judge Wieand also relies on statutory provisions which require nondisclosure of illegally obtained communications. These sections of the wiretap statutes do not provide a basis for the trial judge to exercise discretion, as Judge Wieand contends. If applicable (i.e., if the communications were illegally obtained), the statutes absolutely require nondisclosure. Judge Wieand does not even claim that the communications involved here were obtained illegally, and as demonstrated in part II. C., *infra,* Catania's contention that the communications were illegally obtained is without merit. Hence the statutory provisions cited by the concurring opinion are inapplicable.

The opinion of the court below also gives no clue concerning why a new privacy right was created in this case, or why the alleged privacy right outweighs the public's access rights under either the First Amendment or common law. The only relevant authority cited in Judge Cherry's opinion is the following quotation from the Supreme Court of the United States:

> Furthermore, any denial of access in this case was not absolute but only temporary. Once the danger of prejudice had dissipated, a transcript of the suppression hearing was made available. The press and the public then

had a full opportunity to scrutinize the suppression hearing.

*Gannett Co., Inc. v. DePasquale,* 443 U.S. 368, 393, 99 S.Ct. 2898, 2912, 61 L.Ed.2d 608 (1979). The "danger of prejudice" which had dissipated in *Gannett* was possible harm to the defendants' fair trial rights. Dissipation of this danger gave rise to the immediate release of the transcript in *Gannett.* In the case before us, there is no longer any possible danger to fair trial rights, since there will be no trial. Therefore, to the extent the quoted passage from *Gannett* is relevant, it supports the precise opposite of Judge Cherry's conclusion.[3]

### C.

The final problem is that Judge Cherry never ruled on Catania's argument that the interceptions were unlawfully obtained. In petitioning the court below for access to the *Starks* hearing transcript, the media took the position that the interceptions were lawfully obtained, while Catania maintained his position that they were not.[4] A court cannot hand victory to one side in a dispute simply through its own failure to rule on a question properly before it. *See, e.g., Nigrelli v. Cody,* 281 Pa.Super.Ct. 156, 159, 421 A.2d 1195, 1196 (1980), *rearg. denied.*

When the lower court has failed to make a necessary determination of an issue before it, we should remand the

---

3. Even if the privacy right, for which no one has been able to locate any authority, is assumed to exist, we would still have the problem of how to review the lower court's determination that the privacy right outweighed the public's access rights. Judge Cherry made no factual findings to support his conclusion. This is understandable, since Catania made no factual allegations, but it is difficult to see how we could determine whether the lower court's action was an abuse of discretion when there is nothing to review.

4. Catania's brief attempts to make much of the fact that one of the attorneys for the media has at times incorrectly referred to a "stipulation" that the interceptions in this case were consensual. While it is true that there was no written stipulation filed in the lower court, the effect is the same, since Catania did not challenge Richard Burke's consent in arguing for suppression of the tapes in the court below. Instead, Catania relied on the statutory construction argument outlined in note 5, *infra.*

case so that the determination can be made in the first instance by the lower court, if there is a factual dispute or some other reason the lower court should make the determination first. *Commonwealth v. Guinther*, 290 Pa.Super.Ct. 441, 447 & n. 4, 434 A.2d 834, 837 & n. 4 (1981); *see Nigrelli v. Cody, supra*, 281 Pa.Super.Ct. at 161, 421 A.2d at 1198; *cf. Commonwealth v. Bellis*, 497 Pa. 323, 331 & n. 12, 440 A.2d 1179, 1183 & n. 12 (1981), *rearg. denied* (1982). If there is no factual dispute and we already have an adequate record before us, however, we can make the determination ourselves. *See, e.g., Lucas Enterprises, Inc. v. Paul C. Harman Company, Inc.*, 273 Pa.Super.Ct. 422, 424, 417 A.2d 720, 721 (1980); *see also Commonwealth v. Aldinger*, 292 Pa.Super.Ct. 149, 155, n. 6, 436 A.2d 1196, 1199, n. 6 (1981). I would favor the latter approach here, since there are no facts in dispute and we can easily determine the issue on the record before us. A review of Catania's argument on the issue shows that, assuming it has not been waived or abandoned, it is frivolous on the merits.[5]

The majority's determination not only sanctions a decision which violates the public's First Amendment rights, but also insulates that decision from appellate review because the lower court failed to rule on a properly presented issue. These egregious errors are compounded by allowing the

---

5. Insofar as it is comprehensible, Catania's argument appears to be that the Pennsylvania Wiretapping and Electronic Surveillance Control Act only authorizes an "investigative or law enforcement officer," as defined in 18 Pa.C.S. § 5702, to investigate the state offenses enumerated in 18 Pa.C.S. § 5708. Therefore, Catania reasons, the federal authorities here violated the state law, since they were only investigating federal offenses, which necessarily were not among the enumerated state offenses. Catania's argument depends on an assumption that Pennsylvania has made it a crime for federal law enforcement officers to investigate federal offenses in accordance with federal law. There is no reason to think that the Pennsylvania legislature even attempted such an absurdity in the Wiretapping and Electronic Surveillance Control Act, and even if it did, such an attempt would be a nullity. Indeed the Act itself explicitly refutes Catania's argument by providing in section 5717(c) that communications obtained in accordance with federal law may be disclosed in testimony under oath in Pennsylvania courts. 18 Pa.C.S. § 5717(c); *see, e.g., Commonwealth v. Trignani*, 334 Pa.Super.Ct. 526, 483 A.2d 862 (1984).

decision to seal the bill of particulars to stand. That decision, an even plainer First Amendment violation, was not even made by the lower court, but by an assistant county solicitor giving clearly erroneous advice to clerks in the Office of Judicial Support. In the words of former Justice Roberts (later Chief Justice, and now a senior judge assigned to this court), "Today's decision is without support in law, fact, reason or public policy .... This compels vigorous dissent." *Citizens Committee to Recall Rizzo v. Board of Elections of City and County of Philadelphia,* 470 Pa. 1, 82, 367 A.2d 232, 274 (1976), *reh'g denied* (dissenting opinion).